UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ALFRED JEROILD WILSON,
FREDERICK WAYNE BURLEY, and
CARLOS DION HISHAW,

    Defendants-Appellants,

Nos. 99-6348
      99-6358
      99-6383

ORDER
Filed May 10, 2001

Before **SEYMOUR**, **HENRY** and **LUCERO**, Circuit Judges.

Appellant's petition for rehearing, filed in appeal number 99-6383, *United States v. Hishaw*, is granted for the limited purpose of correcting footnote 7 of the court's slip opinion filed on March 29, 2001. Footnote 7 is corrected to read as follows:

Like Alfred Wilson, Mr. Hishaw filed a supplemental brief arguing *Apprendi* renders his sentence invalid. Although Mr. Hishaw's indictment identified specific quantities of drugs that he was charged with possessing and distributing, the jury was instructed that it need find only "a measurable amount" of drugs in order to convict. The concurrent thirty-year sentences given to Mr. Hishaw are longer than the unenhanced statutory maximum of twenty years, and Mr. Hishaw does not have a prior drug felony subjecting him to recidivism enhancements. Because drug

quantity increased his sentence beyond the unenhanced statutory maximum but was not found by the jury beyond a reasonable doubt, the procedures followed in Mr. Hishaw's case violated the new requirements of *Apprendi*. However, because he did not object to this violation at the time of trial, we review the issue only for plain error. *See United States v. Keeling*, 235 F.3d 533, 538 (10th Cir. 2000) (applying plain error to *Apprendi* issue); *United States v. Dorris*, 236 F.3d 582, 587 (10th Cir. 2000) (noting other circuits do same). We have discretion to notice a plain error if (1) there is an actual error (2) that is "plain," or obvious, at the time of appeal, (3) affects the defendant's substantial rights, and (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-33, 736 (1993).

After *Apprendi*, the failure to submit drug quantity to the jury is an error that is plain, and because it involves a ten-year increase in Mr. Hishaw's sentence it certainly affects his substantial rights. However, the fourth plain error requirement is not met in this case. The Supreme Court has explained that the omission of an essential element of an offense from jury consideration does not seriously affect the fairness or integrity of a proceeding if the evidence related to that element was overwhelming. *See Johnson v. United States*, 520 U.S. 461, 470 (1997). This is particularly true where a trial court follows procedures that were universally considered fair at the time of trial. Accordingly, in *Keeling*, 235 F.3d at 539-40 (10th Cir. 2000), we determined that despite *Apprendi* there was no plain error in failing to submit drug quantity to the jury because extensive quantity evidence had been presented at trial. Here, too, the evidence was overwhelming. Mr. Hishaw's sentence could be enhanced to thirty years upon a finding of only five grams of crack cocaine – in contrast, trial evidence proved his involvement with over six kilograms of the drug, over a thousand times more than the necessary amount. Therefore we find no plain error in this case and will not revise his sentence despite the *Apprendi* violation.

A copy of the revised opinion is attached to this order.

Entered for the Court
Patrick Fisher, Clerk of Court

By:
    Keith Nelson
    Deputy Clerk

-2-

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 29 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ALFRED JEROILD WILSON,
FREDERICK WAYNE BURLEY, and
CARLOS DION HISHAW,

     Defendants-Appellants,

Nos. 99-6348
      99-6358
      99-6383

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CR-98-206-T)

**99-6348,** *United States v. Wilson***:**

Vicki Mandell-King, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant Wilson.

Leslie M. Maye, Assistant United States Attorney (Daniel G. Webber, Jr., United States Attorney, and Sue Tuck Richmond, Assistant United States Attorney, with her on the briefs), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

**99-6358,** *United States v. Burley***, and 99-6383,** *United States v. Hishaw***,**
**submitted on the briefs:**

Thomas D. McCormick of Oklahoma City, Oklahoma, submitted briefs for Defendant-Appellant Burley.

Joseph L. Wells of Oklahoma City, Oklahoma, submitted briefs for Carlos Dion Hishaw.

Daniel G. Webber, Jr., United States Attorney, and Leslie M. Maye, Assistant United States Attorney, Oklahoma City, Oklahoma, submitted a brief in each case for Plaintiff-Appellee.

---

Before **SEYMOUR**, **HENRY** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

Alfred Wilson, Frederick Burley, and Carlos Hishaw were three of thirteen defendants indicted together as part of an extensive drug distribution conspiracy operating in the Oklahoma City area. The three were tried jointly. They were convicted on multiple counts of possession and distribution of cocaine base (crack) and conspiracy in violation of 21 U.S.C. §§ 841 and 846. Each appeals various aspects of his conviction or sentence, and because the appeals share a factual history, we have consolidated them for purposes of this disposition. We affirm appellants' convictions and sentences for the reasons discussed below.

# I

## Background

In late 1995, Jeffrey Norris and Robert Moore formed a partnership to

transport cocaine powder from Houston and Los Angeles to the Oklahoma City area, "rock up" the cocaine powder into crack cocaine, and then sell the crack on the local market. Their plan was to sell crack on the "volume discount" model employed by many legitimate businesses. By selling the drug at a low profit margin but in large quantity, they could offer below-market prices on each individual sale while still making significant profits when all sales were aggregated. Like most successful entrepreneurs, they reinvested early profits into the business, using money from drug sales to pay the salaries of drivers and other employees, to lease apartments, and to buy more cocaine powder to convert into crack. The business flourished, and as sales grew they hired a number of "wholesale distributors," upper-level dealers who purchased crack in quantities ranging from four-and-a-half ounces to over a kilogram and then re-distributed the drug to middle-level dealers or directly to users. These wholesale distributors included Alfred Wilson, Frederick Burley, and Carlos Hishaw.

There was only one hitch in the Norris-Moore business plan: the business itself was illegal. The Oklahoma City police department began investigating the drug ring in 1997, with help from the FBI, IRS, DEA, and a police task force based in Houston. By late 1998 all major co-conspirators had been indicted. Despite its ultimate failure, the conspiracy did a substantial amount of business during its three years of operation, transporting an estimated 250 kilograms (over

500 pounds) of cocaine powder into Oklahoma and transforming it into approximately 375 kilograms (over 800 pounds) of crack cocaine.

Messrs. Wilson, Burley, and Hishaw, along with other alleged co-conspirators, were charged in an eighty-seven count indictment filed in the Western District of Oklahoma in November 1998. Count One charged all thirteen with conspiring with Jeffrey Norris and Robert Moore to possess with intent to distribute and to distribute cocaine base in violation of 21 U.S.C. § 846. The majority of the remaining counts alleged possession or distribution of cocaine base, describing particular drug transactions involving indicted individuals and setting forth the details of each transaction, including the quantity of drugs allegedly possessed or distributed.

After the other ten co-conspirators pled guilty or otherwise severed their cases, Messrs. Wilson, Burley, and Hishaw were tried together before a jury. After one charge against Alfred Wilson was dismissed at trial, he was convicted on the conspiracy charge and two counts of possession with intent to distribute crack cocaine. He was sentenced to 262 months' imprisonment and five years' supervised release on each of the three counts, with terms to run concurrently. The jury found Frederick Burley not guilty of one possession charge but guilty on seven other counts, including the conspiracy charge. He was given concurrent sentences of thirty years in prison and five years' supervised release for each

count.  Carlos Hishaw was convicted on all fourteen of the counts charged against him, including the conspiracy count and a firearm possession charge.  He was sentenced to concurrent terms of thirty years' imprisonment and five years' supervised release on all but the firearm charge, which carried a concurrent term of ten years in prison and three years' supervised release.

A forfeiture hearing was subsequently held, at which all defendants waived their right to a jury trial and consented to trial of the forfeiture issue by the district court.  The court imposed the full forfeiture amount sought by the government, $4.25 million, which was computed by multiplying the 250 kilograms of cocaine allegedly sold by the "wholesale price" of $17,000 per kilogram.  The full $4.25 million forfeiture was levied jointly and severally against all defendants, although in fact the government could seize only a 1995 Camaro belonging to Carlos Hishaw and $6,245 in cash belonging to two other co-conspirators.  We address in turn the issues raised on appeal by each defendant.

## II

## Alfred Wilson

Alfred Wilson originated his appeal to challenge two aspects of the final forfeiture order, in which all thirteen defendants were held jointly and severally

liable for forfeiting $4.25 million in drug proceeds under 21 U.S.C. § 853. He argues first that the district court erred in holding him jointly and severally liable for proceeds from the entire 250 kilograms of crack, since only 19.4 kilograms were attributed to him at sentencing. He argues further that the court was wrong to order forfeiture of gross drug proceeds, contending the net profit after expense deductions yields a more appropriate figure. The district court considered both objections and, while noting the Tenth Circuit had yet to rule on either issue, determined the proper standard for criminal forfeiture under section 853 encompasses joint and several liability for gross proceeds. We do not consider either question, since Mr. Wilson's forfeiture challenge is unripe at this time.

## A.    Forfeiture

The indictment issued against Mr. Wilson and the other defendants included allegations seeking criminal forfeiture of "[a]pproximately $4,250,000 in United States currency, in that such sum in aggregate was received in exchange for the distribution of controlled substances or is traceable thereto." App., vol. 1, indict. at 45. This figure was obtained by multiplying estimated sales of 250 kilograms of cocaine powder by a wholesale price of $17,000 per kilogram. During the course of the investigation, however, only $6,245 in cash and a Camaro were actually seized. Although the relevant statute, 21 U.S.C. § 853, allows jury determinations of forfeiture questions during trial, the three

-6-

defendants waived their right to a jury trial on forfeiture and agreed to have a separate hearing before the court at the conclusion of other proceedings.

At the forfeiture hearing, the government sought to hold all co-conspirators jointly and severally liable for forfeiture of the entire $4.25 million garnered by the crack distribution scheme. Carlos Hishaw objected to the government's seeking joint and several liability as opposed to holding each co-conspirator individually liable for the amount of drugs attributed to him at sentencing. He also objected to calculating the forfeiture figure based upon gross drug proceeds rather than the profit actually netted after deducting expenses. Frederick Burley merely noted he had no interest in any of the seized property. Mr. Wilson stated that "there was no property seized [from him], so we don't . . . . claim any interest in the property." App., vol. 8 at 1311. However, he went on to "incorporate" Mr. Hishaw's objection to calculating forfeiture amounts based on gross proceeds rather than net profits. *Id.* The court determined the Tenth Circuit had not ruled on either of the two objections, but surveyed the law of other circuits and concluded the proper forfeiture standard is one of joint and several liability for gross proceeds, ultimately holding each defendant responsible for forfeiture of the full $4.25 million sought by the government.

Mr. Wilson now seeks to raise both of the earlier objections. His argument regarding the use of gross proceeds instead of net profits fails from the start.

While this appeal was pending we decided that question in *United States v. Keeling*, 235 F.3d 533, 537 (10th Cir. 2000), holding section 853 contemplates forfeiture of "gross proceeds and not merely profits." Mr. Wilson's appeal suffers from a more basic problem, however: his appeal of the forfeiture order is not ripe.

Under Article III of the Constitution, federal courts have subject matter jurisdiction only over "cases and controversies."[1] Whether a claim is ripe for adjudication, and therefore presents a case or controversy, bears directly on this jurisdiction. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995). The ripeness doctrine is "intended 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* at 1499 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)). "In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form." *Id.* (internal quotations and citations omitted). In determining whether a claim is ripe, two issues must be evaluated: (1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of

---

[1] Neither party raised the issue of justiciability in briefs or at oral argument. Since the question of ripeness relates to the subject matter jurisdiction of the federal courts, however, we consider it *sua sponte*. *See Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000); *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1444 (10th Cir. 2000).

withholding judicial consideration. *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1208 (10th Cir. 1999). Although this Court has confronted the ripeness of challenges to fines and punishments, we have not considered the ripeness of an appeal of a forfeiture order under 21 U.S.C. § 853 (2000). *Compare United States v. Koonce*, 885 F.2d 720, 722 (10th Cir. 1989) (not ripe to argue defendant subject to multiple punishments for same offense if defendant not yet convicted and punished) *with United States v. Grose*, 687 F.2d 1298, 1300 (10th Cir. 1982) (en banc) (appeal of fine ripe for review where already certain fine would come due).

In order for Mr. Wilson to challenge the forfeiture order, he must demonstrate that his claim is ripe. As Mr. Wilson himself noted at the forfeiture hearing, however, no property was taken from him and he claims no interest in any of the seized property. The criminal forfeiture statute is limited on its face to property obtained from or used in the underlying crime. *See* 21 U.S.C. § 853(a); *see also United States v. One Parcel Property*, 106 F.3d 336, 339 (10th Cir. 1997) (per curiam) (government must show connection between offense and forfeited property). It is difficult to discern what actual liability Mr. Wilson has under the forfeiture order. At least in theory, he is responsible for turning over $4.25 million to the government. The final order of forfeiture did not expressly limit the forfeitable property to that already seized, condemning "$4,250,000 in

proceeds from the unlawful conspiracy, *which included*" the $6,245 and the Camaro. If a hidden cache of drug proceeds belonging to Mr. Wilson and connected to these transactions were later discovered, the government might be able to seek forfeiture of the money based on Mr. Wilson's liability under the forfeiture order. At present, however, such possibilities remain purely hypothetical and speculative. Consequently, the issue is not fit for judicial resolution at this time. *Cf. Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 60 (1989) ("These claims can only be reviewed when (or if) such remedies are *enforced* against petitioner." (emphasis added)). Nor can we discern how withholding judicial consideration would cause Mr. Wilson any hardship, since at present there appears to be no property connected to his crime for the government to seize. Therefore, we hold that Mr. Wilson's claim is not ripe, and is not justiciable.

**B.    Application of *Apprendi***

While this appeal was pending, the Supreme Court decided *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362-63. After receiving permission from this court, Mr. Wilson filed a supplemental brief asserting the trial and sentencing

procedures followed in his case violate the rule of *Apprendi*. Although the jury did not determine drug quantity beyond a reasonable doubt, Mr. Wilson's sentence falls within the prescribed statutory maximum of the offense the jury *did* consider. Consequently, as we discuss below, no *Apprendi* violation occurred in this case.

Mr. Wilson argues drug quantity is an essential element which must be considered in the wake of *Apprendi*. Although *Apprendi* was decided after Mr. Wilson's trial and sentencing, its holding is applicable to his pending appeal on direct review. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1993).

In the months since *Apprendi* was decided, this court has held that drug quantity is one fact which must be proven to the jury beyond a reasonable doubt, *see United States v. Anthony Hishaw*, 235 F.3d 565, 575 (10th Cir. 2000), and that the logic of *Apprendi* requires drug quantity to be included in an indictment as well, *see United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir. 2000). The indictment in this case charged Mr. Wilson with possessing and distributing two eighteen-ounce quantities of crack cocaine. The government filed an information prior to trial and pursuant to 21 U.S.C. § 851 stating that any sentence Mr. Wilson might receive should be enhanced due to his prior drug felony conviction. He stipulated to the two eighteen-ounce amounts at trial, but then requested a jury instruction explaining that the government must prove possession of the

approximate quantities charged in the indictment. *See* Supp. App., vol. 2, doc. 184. The district court instead followed common pre-*Apprendi* practices and instructed the jury that "the government is not required to prove the specific amount or quantity of the controlled substance as alleged in the indictment, but only that a measurable amount of the controlled substance was involved." Supp. App., vol. 2, doc. 206, instr. 25.

The issue of drug quantity arose again at sentencing. Mr. Wilson's pre-sentence report alleged he should be held responsible for distributing 19.4 kilograms of crack cocaine over the course of the conspiracy. He objected, asserting trial testimony established his involvement with only ten kilograms. The sentencing judge noted the probation office had done a careful job of calculating the amount of drugs to be attributed to Mr. Wilson as relevant conduct, and held 19.4 kilograms was the correct amount. The difference between ten kilograms and 19.4 kilograms was essentially irrelevant in any event, since the applicable sentencing guideline was triggered at a markedly lower threshold of 1.5 kilograms. Based on Mr. Wilson's criminal history and this amount of drugs, his sentencing guideline range was 262-327 months in prison and at least five years of supervised release, and he was sentenced to 262 months and five years on each count, with the sentences to run concurrently.

When drug quantity is used to enhance a sentence beyond the statutory

maximum after *Apprendi*, it must be charged in an indictment and proven to a jury beyond a reasonable doubt. Mr. Wilson's indictment specified two eighteen-ounce quantities of crack cocaine, or just over one kilogram of the drug.[2] The jury, however, was instructed that it need only find Mr. Wilson possessed "a measurable amount" of the drug.[3] Supp. App., vol. 2, doc. 206, instr. 25. Since *Apprendi* held that any fact *which increases a sentence beyond the maximum prescribed by statute* must be found by a jury beyond a reasonable doubt, the *Apprendi* rule was violated for Mr. Wilson if drug quantity increased his sentence beyond the statutory maximum established for the offense which the jury did

[2] One ounce equals 28.35 grams; thirty-six ounces is equivalent to 1,020.6 grams.

[3] The government argues the jury need not have considered quantity because Mr. Wilson stipulated during trial to possessing the approximate quantities charged in the indictment. *See generally United States v. Mason*, 85 F.3d 471, 472 (10th Cir. 1996) ("The jury need not resolve the existence of an element when the parties have stipulated to the facts which established that element."). If the jury is assumed to have found Mr. Wilson guilty of possessing thirty-six ounces of cocaine base, his violation would fall under 21 U.S.C. § 841(b)(1)(B)(iii), which carries sentences of up to forty years. His 262-month sentence would fit easily within this maximum, and there would be no *Apprendi* error. Mr. Wilson responds by pointing out there was no reason to contest quantities at trial, since drug quantity was purely a sentencing issue prior to *Apprendi*. *See generally United States v. Cutler*, 676 F.2d 1245, 1248 (9th Cir. 1982) (appellant relieved of stipulation where intervening change in law rendered conduct non-criminal). We are not inclined to consider the stipulation as controlling, considering the lack of incentive to contest drug quantity before *Apprendi* and the fact that Mr. Wilson did request a jury instruction requiring the jury to consider approximate quantity. In any event, the issue is not determinative since there is no *Apprendi* error under the standard of "any measurable amount."

consider, possession of "a measurable amount" of crack cocaine. *See Jones*, 235

F.3d at 1237 (conviction sound where indictment alleged and jury convicted on

drug offense, even if quantity enhancement invalid). If drug quantity did not

cause Mr. Wilson's sentence to exceed the statutory maximum, *Apprendi* does not

require that the jury make findings on quantity.[4] It is clear the sentencing judge

considered drug amounts beyond the thirty-six ounces alleged in the indictment

when computing Mr. Wilson's sentence, but that is not error unless the statutory

maximum was exceeded. *See Anthony Hishaw*, 235 F.3d at 577 ("as long as the

defendant's sentence falls within the maximum established by statute, *Apprendi*

does not foreclose consideration of drug quantities beyond the offense of

conviction").

The primary federal statute regarding possession and distribution of

---

[4] Courts will most likely submit drug quantity to the jury in order to preserve the entire range of enhanced sentencing options, but by *Apprendi*'s specific terms the jury need only determine specific quantity *if* it leads to sentences beyond the maximum for mere possession. See, for example, *United States v. Thompson*, No. 00-7028, 2001 WL 63361 (10th Cir. Jan. 24, 2001), and cases cited therein, finding *Apprendi* is not violated if a defendant's sentence falls within the twenty-year maximum sentence of 21 U.S.C. § 841(b)(1)(C), regardless of whether the indictment charged and the jury considered drug quantity. *See also United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir. 2000) (drug quantity an essential element of offense if exposes defendant to sentence beyond maximum); *but see United States v. Heckard*, No. 99-2186, 2001 WL 15532, at *10-11 (10th Cir. Jan. 8, 2001) (error for jury not to consider drug quantity even though sentence below the maximum, but not "plain error" because no substantial rights affected); *United States v. Hishaw*, 235 F.3d 565, 575-76 (10th Cir. 2000) (same); *United States v. Keeling*, 235 F.3d 533, 538-39 (10th Cir. 2000) (same).

controlled substances is 21 U.S.C. § 841. Section 841 is divided into two subsections: subsection (a), which makes it illegal to manufacture or distribute controlled substances or to possess them with the intent to manufacture or distribute, and subsection (b), which establishes three tiers of penalties distinguished by the amount of drugs involved in an offense. For cocaine base, dealing in any measurable amount of the drug is covered by 21 U.S.C. § 841(b)(1)(C), which carries a sentence of "not more than twenty years" in prison and three years' supervised release for each violation. In contrast, amounts in excess of five grams are covered by section 841(b)(1)(B)(iii), which establishes sentences of five to forty years, and amounts over fifty grams appear in section 841(b)(1)(A)(iii), which carries the longest sentence of ten years to life in prison.

The jury found Mr. Wilson guilty of distributing a measurable amount of crack cocaine. Mr. Wilson argues there is an *Apprendi* error in his case because the general maximum penalty for violations of section 841(b)(1)(C) is twenty years in prison, a number exceeded by his 262-month sentence. *See Jones*, 235 F.3d at 1237 (defendant's conviction sound where "indictment indisputably stated [drug] offense" and jury voted to convict, but resentencing required because sentence exceeded statutory maximum). As the government points out, however, Mr. Wilson has been previously convicted of a drug felony, and each level of section 841(b) sets out a higher maximum sentence for drug recidivists. As stated

-15-

in subsection 841(b)(1)(C): "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years" and a minimum of six years' supervised release. 21 U.S.C. § 841(b)(1)(C). Mr. Wilson's 262-month sentence fell within this heightened maximum,[5] and thus there is no *Apprendi* error in his case.

Mr. Wilson asserts that because the existence of a prior drug felony increases the sentence for drug crimes, this too should be treated as an essential element to be presented in an indictment and decided by a jury. His argument is expressly foreclosed by the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held recidivism may be treated as a sentencing factor rather than an essential element of the underlying offense. *Id.* at 239. Although Mr. Wilson asserts that "*Apprendi* foreshadows the overruling of *Almendarez-Torres*," Appellant Supp. Br. at 11, the holding of *Almendarez-Torres* remains the controlling law. *See United States v. Dorris*, 236 F.3d 582, 587 (10th Cir. 2000) (explaining same); *United States v. Martinez-Villalva*, 232 F.3d 1329, 1331 (10th Cir. 2000) (same). The new rule of *Apprendi* specifically

---

[5] In fact, Mr. Wilson was sentenced to five years' supervised release, which is lower than the six-year minimum required for prior drug felons under 21 U.S.C. § 841(b)(1)(C). Because this error did not prejudice Mr. Wilson, there is no need to remand for its correction.

carves out the recidivism issue, requiring that facts "other than the fact of a prior conviction" be proven to a jury. *Id*. There is no way to predict whether the Supreme Court would overrule *Almendarez-Torres* on further consideration, and in fact there may be valid reasons for treating recidivism as an exception to *Apprendi*. As the Court pointed out in *Almendarez-Torres*, "the introduction of evidence of a defendant's prior crimes risks significant prejudice," and is often unnecessary "in respect to facts that are almost never contested." 523 U.S. at 235. *Almendarez-Torres* remains the prevailing legal standard, and there is no error in treating Mr. Wilson's prior felony drug conviction as a sentence enhancer without presenting it to the jury.

Because Mr. Wilson's sentence fell within the enhanced statutory maximum for possession of any measurable amount of crack cocaine, the offense for which the jury actually convicted him, there is no *Apprendi* violation in this case and his sentence is affirmed.

### III

### Frederick Burley

Frederick Burley was the only defendant to testify in his own defense. During cross-examination, the government asked him several questions about past arrests for drug-related crimes. Mr. Burley contends these questions violated

Rule 609 of the Federal Rules of Evidence, which allows questions about past *convictions* in some circumstances but makes no provision for mention of *arrests*. The government asserts the questions about past drug arrests were valid as impeachment of Mr. Burley's direct testimony, since he had denied all involvement with drugs. We conclude that it was error to allow questions based on past arrests, but that this error was harmless in light of the weight of other evidence presented.

At trial, Mr. Burley testified that he did not use, sell, or buy crack cocaine and that he did not know any of the other alleged co-conspirators. App., vol. 6 at 1203. He denied specific allegations of distributing crack, *id.* at 1195, denied knowing the main prosecution witness, *id.* at 1196, denied operating a crack house, *id.* at 1199-1200, and stated categorically that he "never [saw] any crack cocaine, period," *id.* at 1214. In response, the prosecutor asked him, "You have been charged in the State of Oklahoma with charges involving crack cocaine; is that correct?" *Id*. at 1215. She went on to ask about four other arrests, most for possession of marijuana, and concluded, "So you've had a lot of contacts with the police; is that correct?" *Id.* at 1215. Mr. Burley objected to the court's allowing questions based on past arrests, but the objection was overruled. We review evidentiary matters for abuse of discretion. *See United States v. Haslip*, 160 F.3d 649, 653 (10th Cir. 1998), *cert. denied*, 526 U.S. 1044 (1999).

Mr. Burley contends the mention of past arrests was improper under Rule 609 of the Federal Rules of Evidence. Rule 609 provides that "[f]or the purpose of attacking the credibility of a witness, . . . evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1). We agree that questions based upon past arrests are not properly within the scope of this rule. Rule 609 refers specifically to convictions, and one may not extrapolate from convictions to other situations such as arrests. *See, e.g.*, *United States v. Enjady*, 134 F.3d 1427, 1435 (10th Cir.), *cert. denied*, 525 U.S. 887 (1998) (Rule 609 "inapposite" where acts in question "did not result in criminal convictions"). Even if the rule's balancing test were applicable to arrests, the potential for prejudice is high and past arrests have little probative value because "[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty." *United States v. Robinson*, 978 F.2d 1554, 1559-60 (10th Cir. 1992) (quoting *Michelson v. United States*, 335 U.S. 469, 482 (1948)).

In response, the government argues the evidence was admissible under Rules 404(a)(1), 405(a), or 608(b) of the Federal Rules of Evidence. The objection at trial was not based upon a particular rule, and we may affirm if the

-19-

evidence was admissible under any of the rules. *See Robinson*, 978 F.2d at 1562.

However, the arrest evidence was not admissible under these rules. Rule 404(a) allows facts offered by the prosecution to rebut "evidence of a pertinent trait of character offered by an accused." Fed. R. Evid. 404(a)(1). Even to the extent that "not using or selling drugs" could be considered a "trait of character," Rule 404(b) goes on to instruct that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Past arrests for drug possession are admissible under Rule 404(b) if certain clearly defined conditions are met, *see United States v. Ramirez*, 63 F.3d 937, 942-43 (10th Cir. 1995), but the rule requires more than "simply testimony that records indicate an arrest took place," *Robinson*, 978 F.2d at 1560. It makes sense to restrict use of arrest testimony under Rule 404, since Rule 609 was enacted to curb the potentially prejudicial use of conviction evidence, and arrests receive more protection than convictions. Rule 405(b) is inapposite, since it relates to "cases in which character or a trait of character of a person is an *essential element* of a charge, claim, or defense" (emphasis added). Fed. R. Evid. 405(b). There is no trait of character essential to convictions for drug crimes. Rule 608 is relevant "only if the conduct relates to truthfulness or untruthfulness," *United States v. McHorse*, 179 F.3d 889, 901 (10th Cir.), *cert. denied*, 528 U.S. 994 (1999), and, while the government was

trying to test the veracity of the witness, the drug crimes themselves (the "conduct" at issue) have no relation to truth or untruth.

Accordingly, it was error for the district court to allow mention of Mr. Burley's past arrests under any of the Federal Rules of Evidence. "Where the evidence against a defendant is overwhelming," however, "any error in mentioning a defendant's criminal record is harmless." *United States v. Anaya*, 117 F.3d 447, 449 (10th Cir. 1997) (quoting *United States v. Sloan*, 65 F.3d 861, 865 (10th Cir. 1995)). In light of the weight of evidence offered by the prosecution showing Mr. Burley's involvement with crack distribution, the mention of his past arrests was unlikely to have the required "substantial influence on the jury's verdict." *Id.* at 448 (quoting *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993)); *see also Kotteakos v. United States*, 328 U.S. 750, 764 (1946) ("If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . ."). We hold that the error in allowing cross-examination regarding Mr. Burley's past arrests was harmless.

## IV

### Carlos Hishaw

Carlos Hishaw raises four arguments on appeal. He contends the district

-21-

court should have granted his two motions for mistrial, the first based on a trial witness' improper mention of Mr. Hishaw's jail sentence and the second based on a question posed to Frederick Burley regarding a joint arrest with Mr. Hishaw. He also argues there was insufficient evidence to support his conviction. Finally, he contends the district court erred in computing the amount of drugs to be attributed to him at sentencing. We address each issue in turn and affirm.

## A. Inappropriate Answer by Witness

Mr. Hishaw moved for a mistrial based on possibly prejudicial witness testimony that gave the impression Mr. Hishaw had been in jail. We review the court's denial of that motion for abuse of discretion. *See Sloan*, 65 F.3d at 865. Mr. Hishaw argues the prosecutor's conduct in soliciting the testimony was improper. Even where a prosecutor's conduct is improper, we will only overturn the conviction if that misconduct "was flagrant enough to influence the jury to convict on grounds other than the evidence presented." *United States v. Lowder*, 5 F.3d 467, 473 (10th Cir. 1993). Here, the prosecutor was very careful to avoid mention of Mr. Hishaw's jail sentence, asking the witness about an occasion when Mr. Hishaw "went away for a while." App., vol. 3 at 401. The witness, Anthony Watkins, attempted to reply in kind. At one point, however, he mentioned "when he [Mr. Hishaw] got out . . .," *id.* at 403, implying the reason for Mr. Hishaw's absence was a prison term. On overruling Mr. Hishaw's objection, the court

noted this comment had been uttered almost under the witness' breath and that there was a "good chance" that the jury did not hear it, adding "I would offer to give a limiting or cautioning instruction, but I think . . . that would unduly highlight it." *Id*. at 404-05. Considering this context and the weight of valid testimony regarding the alleged offenses, any error stemming from the accidental testimony was harmless and the court did not abuse its discretion in denying Mr. Hishaw's motion for mistrial.

**B.     Mention of Past Arrest**

Mr. Hishaw's second motion for mistrial stemmed from one of the questions asked of Frederick Burley regarding his past arrests. The prosecutor asked Mr. Burley: "And you were arrested with Carlos Hishaw, with Killer, on December 8th of 1994 for possession of marijuana; is that correct?" App., vol. 6 at 1217. On objection, the court acknowledged the question was improperly prejudicial with regard to Mr. Hishaw, but it overruled his motion because the question "does not rise to the level of prejudice such as would justify a mistrial." *Id*. at 1221-23. We have determined the questions based on past arrests were error with regard to Mr. Burley, who was the actual witness, and so they were certainly error with regard to Mr. Hishaw. Once again, however, we conclude the

-23-

error was harmless[6] in the context of the case as a whole.  *See Anaya*, 117 F.3d at 449.

## C.      Sufficiency of the Evidence

Finally, Mr. Hishaw challenges the sufficiency of the conspiracy evidence presented against him.  It is difficult to succeed with such an argument, "since we reverse on a sufficiency of the evidence claim 'only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Haslip*, 160 F.3d at 652 (quoting *United States v. Wacker*, 72 F.3d 1453, 1462-63 (10th Cir. 1995)).  While we review the record de novo, we must draw all reasonable inferences in the light most favorable to the government, and we may not consider the credibility of witnesses or weigh the trial evidence.  *See id.* at 652-53.  Here, Mr. Hishaw argues, in essence, that the government's key witness could not be trusted because he admitted to lying under oath on other occasions, and that without his testimony there was not enough evidence to prove Mr. Hishaw's involvement in the conspiracy.  The credibility of witnesses and weighing of the evidence presented are squarely within the province of the jury.

---

[6] The government argues the proper standard is one of plain error, since Mr. Hishaw did not object to the prosecutor's question until after the witness had been excused.  Since we find the error harmless and harmless errors cannot meet the standard for plain error, the result is the same under either standard.  *See United States v. Olano* 507 U.S. 725, 733-34 (1993) (error must affect outcome of trial to be "plain error").

Based on the combined testimony of several trial witnesses, a reasonable juror could have found Mr. Hishaw guilty of conspiracy. We will not overturn his conviction on appeal.

## D.    Computation of Drug Totals

At sentencing, Mr. Hishaw objected to the probation office's calculation that he should be attributed with responsibility for over ten kilograms of cocaine base, arguing the total was based on "guesses at best by unreliable witnesses who all had something to gain by testifying for the government." Appellant Br. at 3-4. While we review the legal basis for sentencing de novo, we will accept the district court's findings of fact unless they are clearly erroneous. *See Keeling*, 235 F.3d at 535-36. No crack cocaine was actually seized from Mr. Hishaw; the ten kilogram total was based on trial testimony regarding 6.5 kilograms alleged in the indictment[7] and on application of relevant conduct at sentencing, attributing to

---

[7] Like Alfred Wilson, Mr. Hishaw filed a supplemental brief arguing *Apprendi* renders his sentence invalid. Although Mr. Hishaw's indictment identified specific quantities of drugs that he was charged with possessing and distributing, the jury was instructed that it need find only "a measurable amount" of drugs in order to convict. The concurrent thirty-year sentences given to Mr. Hishaw are longer than the unenhanced statutory maximum of twenty years, and Mr. Hishaw does not have a prior drug felony subjecting him to recidivism enhancements. Because drug quantity increased his sentence beyond the unenhanced statutory maximum but was not found by the jury beyond a reasonable doubt, the procedures followed in Mr. Hishaw's case violated the new requirements of *Apprendi*. However, because he did not object to this violation at the time of trial, we review the issue only for plain error. *See United States v.*

(continued...)

him reasonably foreseeable amounts possessed in furtherance of the jointly undertaken criminal activity. *See United States v. Sloan*, 65 F.3d 861, 865 (10th Cir. 1995); *see also Keeling*, 235 F.3d at 536 (discussing relevant conduct).

When drugs are not seized from a defendant or the amount seized does not reflect the true amount, the court may rely on estimates it deems sufficiently reliable. *See United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996). Here, the estimates were based largely upon the testimony of two co-conspirators

---

[7](...continued)
*Keeling*, 235 F.3d 533, 538 (10th Cir. 2000) (applying plain error to *Apprendi* issue); *United States v. Dorris*, 236 F.3d 582, 587 (10th Cir. 2000) (noting other circuits do same). We have discretion to notice a plain error if (1) there is an actual error (2) that is "plain," or obvious, at the time of appeal, (3) affects the defendant's substantial rights, and (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-33, 736 (1993).

After *Apprendi*, the failure to submit drug quantity to the jury is an error that is plain, and because it involves a ten-year increase in Mr. Hishaw's sentence it certainly affects his substantial rights. However, the fourth plain error requirement is not met in this case. The Supreme Court has explained that the omission of an essential element of an offense from jury consideration does not seriously affect the fairness or integrity of a proceeding if the evidence related to that element was overwhelming. *See Johnson v. United States*, 520 U.S. 461, 470 (1997). This is particularly true where a trial court follows procedures that were universally considered fair at the time of trial. Accordingly, in *Keeling*, 235 F.3d at 539-40 (10th Cir. 2000), we determined that despite *Apprendi* there was no plain error in failing to submit drug quantity to the jury because extensive quantity evidence had been presented at trial. Here, too, the evidence was overwhelming. Mr. Hishaw's sentence could be enhanced to thirty years upon a finding of only five grams of crack cocaine – in contrast, trial evidence proved his involvement with over six kilograms of the drug, over a thousand times more than the necessary amount. Therefore we find no plain error in this case and will not revise his sentence despite the *Apprendi* violation.

serving as government witnesses, Anthony Watkins and Jeffrey Norris. Mr. Hishaw asserts Anthony Watkins' testimony was unreliable. It is the sentencing court's job to weigh the witness' credibility, however, *see Sloan*, 65 F.3d at 865, and the court determined Mr. Watkins was credible, *see* App., vol. 11 at 4-5. Several other witnesses also testified regarding the quantity of drugs distributed by Mr. Hishaw. *See* App., vol. 3 at 249-51 (Jeffrey Norris), vol. 4 at 537-40 (Darrell Turner), vol. 5 at 832-36 (Steve Laster), vol. 6 at 1026-29 (Robert Moore). Considering in particular that his sentencing guideline was triggered at a threshold of 1.5 kilograms, far below the total established by witness testimony, we find no clear error in the court's decision that ten kilograms was the proper amount.

## V

## Conclusion

We **AFFIRM** appellants' convictions and sentences on all counts.