UNITED STATES of America, Plaintiff–Appellee,

v.

Armando BELTRAN–MARTINEZ, also known as Amigo, Defendant–Appellant.

No. 01–8026.

United States Court of Appeals, Tenth Circuit.

Dec. 18, 2001.

## ORDER AND JUDGMENT *

STEPHEN H. ANDERSON, Circuit Judge.

Defendant and appellant Armando Beltran–Martinez was indicted for conspiracy to possess with intent to distribute and conspiracy to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A); distribution of methamphetamine to a person under twenty-one years of age, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 859; and use of a telephone to facilitate a felony drug offense, in violation of 21 U.S.C. § 843(b). A jury found him guilty on all counts, and he was sentenced to 151 months imprisonment on the first two counts (conspiracy to possess and to distribute and to distribute to a person under twenty-one) and forty-eight months imprisonment on the last count (use of a telephone), to be served concurrently, as well as a $1,000 fine and a $300 special assessment.

Beltran–Martinez appeals, arguing (1) the court erred in failing to accept his guilty plea; and (2) the court erroneously submitted to the jury the determination of the amount of methamphetamine and, in any event, there is insufficient evidence supporting that finding. We affirm his conviction and sentence.[1]

## BACKGROUND

Most of the facts relating to the drug sales conducted by Beltran–Martinez and

Before KELLY, ANDERSON, and LUCERO, Circuit Judges.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. We grant the government's motion to supplement the record with a transcript of the attempted change of plea proceedings, a copy of which Beltran–Martinez attached to his brief.

his co-conspirators are irrelevant to the two issues presented in this appeal. We accordingly refer only to those facts which are necessary to our disposition of this case. Briefly, Beltran–Martinez was the third in a series of related individuals who distributed methamphetamine to Jesus Lopez, then sixteen years old. Lopez testified to transactions with the first two of these individuals totaling some twenty-six grams of methamphetamine. Lopez testified that he then began receiving methamphetamine from Beltran–Martinez, known to Lopez as "Amigo," and that he received a total of eight ounces from Beltran–Martinez on various occasions. Lopez also testified that he saw a pound of methamphetamine at Beltran–Martinez's residence on one of those occasions.

After Lopez was arrested, he agreed to cooperate with authorities and made a recorded telephone call to Beltran–Martinez to arrange another purchase of methamphetamine. As he had done on previous occasions, Lopez went to Beltran–Martinez's residence, where he received approximately two and one-half ounces of methamphetamine from Beltran–Martinez. Beltran–Martinez was thereafter arrested.

■ After initially pleading not guilty, Beltran–Martinez reached an oral agreement with the government on the day of trial, pursuant to which he would plead guilty to the one count involving distribution to a person under twenty-one years of age, in exchange for the dismissal of the remaining counts. In the Fed.R.Crim.P. Rule 11 colloquy with Beltran–Martinez, the court placed him under oath and asked him to state in his own words what he did. After responding "yes" to the question whether he had in his possession two-and-one-half ounces of methamphetamine on the day of the controlled sale to Lopez, Beltran–Martinez then equivocated with respect to the amount of the drug, whether he knew Lopez was under twenty-one, how long he had known Lopez, and the reason he gave the methamphetamine to Lopez.[2] The court refused to accept his plea and Beltran–Martinez's trial commenced immediately.

"Federal Rule of Criminal Procedure 11 gives a trial judge discretion to accept a plea of guilty." *United States v. Young*, 45 F.3d 1405, 1414 (10th Cir.1995) (citing *North Carolina v. Alford*, 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). Further, Rule 11 expressly provides that the court should not accept a plea of guilty "without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). We conclude that the district court did not abuse its discretion in refusing to accept Beltran–Martinez's guilty plea.[3]

■ Beltran–Martinez next argues that the court erred in submitting to the jury

2. When asked what he had done with the methamphetamine, Beltran–Martinez responded "I gave them to that friend who told me to give it to him. I just gave it to him, that's all." Tr. of Attempted Change of Plea Proceedings Hr'g at 11, Appellant's Br. at a 33. When asked if he gave it to a person under twenty-one, Beltran–Martinez responded "I don't know how old he would be. I had just met him. I had met him two days before." *Id.* While the government agrees that there is no requirement that a defendant actually know that the person to whom he distributes the drug is under twenty-one, Beltran–Martinez's statement revealed virtually no awareness of who Lopez is, an unwillingness to acknowledge that Lopez actually is under twenty-one, which is an essential element of the offense to which Beltran–Martinez was attempting to plead guilty, and minimal admission that he himself knowingly distributed in excess of fifty grams of methamphetamine.

3. Beltran–Martinez suggests that his equivocation stemmed partly from the fact that he does not speak English and has a third grade

the determination of the quantity of methamphetamine involved in the conspiracy count of which he was charged. Beltran–Martinez did not object to the verdict form with a special interrogatory requesting the jury to find whether the conspiracy involved more than 500 grams of methamphetamine. Accordingly, we review this argument only for plain error. *United States v. Byrne*, 171 F.3d 1231, 1235 (10th Cir.1999); *see* Fed.R.Crim.P. 52(b).

■ Following the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), we have held that:

> the quantity of drugs involved in a violation of § 841 is an essential element of the offense if that fact exposes the defendant to a heightened maximum sentence under § 841(b)(1)(A) or (B). A district court may not impose a sentence in excess of the maximum set forth in 21 U.S.C. § 841(b)(1)(C) unless the benchmark quantity ... for an enhanced penalty is alleged in the indictment in addition to being submitted to the jury and proven beyond a reasonable doubt.

*United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir.2000). In this case, because Beltran–Martinez's sentence did not exceed the statutory twenty-year maximum under § 841(b)(1)(C), the issue of drug quantity need not have been submitted to the jury and found by it beyond a reasonable doubt. However, Beltran–Martinez demonstrates no prejudice or harm to him

from the fact that the court *did* submit the issue to the jury.[4] There is no plain error.

Finally, Beltran–Martinez makes two additional related arguments concerning the drug quantity. He argues that the district court erred in adopting the jury's finding as to drug quantity as opposed to "mak[ing at sentencing] an independent determination of the amount of methamphetamine attributable to [Beltran–Martinez]." Appellant's Br. at 22. He then argues that, even if we find no error in the district court's purported reliance on the jury's finding as to drug quantity, there was insufficient evidence to support that finding. We reject these arguments.

■ The presentence report prepared for Beltran–Martinez contained a detailed recitation of the trial testimony, including, in particular, the testimony concerning the amount of methamphetamine involved in each of Beltran–Martinez's drug transactions. It also referenced the results of an investigation by Drug Enforcement Administration Agent Steve Woodson with respect to that amount. Beltran–Martinez indicated that he had read the PSR, that it was "substantially correct," and that he had no objections to it. Tr. of Sentencing Proceedings at 6, R. Vol. VI. Further, his counsel specifically stated that "much of our defense during the trial is that the amount was less than 500 grams of methamphetamine and that was not successful *and we have conceded that issue*." *Id.* at 7 (emphasis added). When a defendant does

---

education. However, he had a translator assisting him during the attempted change of plea proceedings, and the transcript of those proceedings reveals no evidence that Beltran–Martinez was unable to understand and participate fully in the Rule 11 colloquy.

4. As we have observed, "[c]ourts will most likely submit drug quantity to the jury in

order to preserve the entire range of enhanced sentencing options, but by *Apprendi's* specific terms the jury need only determine specific quantity *if* it leads to sentences beyond the maximum for mere possession." *United States v. Wilson*, 244 F.3d 1208, 1215 n. 4 (10th Cir.2001).

"not challenge the accuracy of the relevant facts contained in the PSR ... under the law of this circuit, they are deemed admitted as true." *United States v. Walters*, 269 F.3d 1207, 1213 (10th Cir.2001). Thus, the district court was entitled to accept as correct the facts relating to drug quantity in the PSR, which facts established a drug quantity in excess of 500 grams. Moreover, we have reviewed the trial testimony and there is ample evidence supporting the finding that Beltran–Martinez was involved in drug transactions where the total amount of methamphetamine exceeded 500 grams.

For the foregoing reasons, we AFFIRM Beltran–Martinez's conviction and sentence.