**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JARRETT CHARLES HOLMES,

    Defendant - Appellant.

No. 02-6053

ORDER

August 21, 2002

Before **EBEL**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

This matter is before the court on appellant's petition for rehearing. The petition for rehearing is granted. Therefore, the court's order and judgment filed on July 22, 2002, is vacated and the attached revised order and judgment is filed today.

Entered for the Court
PATRICK FISHER, Clerk


Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

AUG 21 2002

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JARRETT CHARLES HOLMES,

Defendant - Appellant.

No. 02-6053
(D.C. No. 01-MD-319-M)
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

Jarrett Charles Holmes appeals from the district court's order revoking supervised release. Holmes argues that the evidence that he had violated conditions of his supervised release was insufficient to support revocation. In an order and judgment filed July 22, 2002, this panel denied Holmes's appeal on the ground that he had failed to include in the record on appeal a copy of the transcript of the relevant hearing. Holmes subsequently

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

filed a petition for rehearing in which he explained that the omission of a copy of the transcript from the record on appeal was not his fault. We agree. Accordingly, we grant Holmes's motion for rehearing, vacate our prior order and judgment, and issue the present order and judgment in its place. We affirm the district court's revocation of supervised release.

Holmes was riding in the passenger seat of a vehicle that Oklahoma City police officers stopped on November 12, 2001. Eight vials of phencyclidine (PCP) were found underneath the passenger seat. The district court concluded that Holmes possessed the PCP, actually or constructively, and that such possession amounted to a violation of the terms of his supervised release. ((Tr. 1/22/2002 at 37.) The district court orally made a general finding that the police officers who testified as witnesses for the government were credible witnesses. (Id.) Holmes argues that the district court lacked sufficient evidence to support its conclusion that Holmes possessed the PCP.

On appeal, the government's argument is that the presence of the drugs in the car was so obvious that Holmes's professed ignorance of their presence is incredible. The government's brief relies heavily on its assertion that the bag gave off an odor that was both strong and distinctive. (Aple B. at 9 ("According to both Officers Holland and Upshaw, the phencyclidine gave a strange and strong odor readily noticeable in the car which they associated with phencyclidine."); id. at 12 ("strong, distinguishable odor"). The strength of the odor finds support in the record; the "strange" and "distinguishable"

nature of the odor has less certain record support. Officer Holland testified that he detected the odor from outside the vehicle, "smell[ing] something that I believed to be alcohol, could possibly be PCP." (Tr. 1/22/2002 at 20.) He stated that he stuck his head inside the vehicle and "could smell it stronger." (Id.) He later explained that "[w]hen I first approached the car, I didn't smell it quite so strong," but that when he pulled the bag out from under the seat, "the more I pulled it out, it got stronger and stronger." (Id. at 23.) He stated that as the smell got stronger, he associated it with PCP, a drug with which he was familiar. Officer Holland explained that the PCP was in eight vials inside a paper bag, that several of the vials were broken, and that both the bag and the floorboard around it were wet from the spilled PCP, which led him to conclude that the vials had been broken "right then and there in that floorboard." (Id. at 20, 23.)

Officer Upshaw, the first officer on the scene, did not testify that the odor was strong, and indeed did not testify about noticing the odor at all until after the bag had been pulled out from under the seat. (Id. at 7.) He testified that, because he smelled the same odor on the driver, "I thought she may have been intoxicated." (Id.) Officer Holland confirmed that this was Officer Upshaw's impression when he testified that Officer Upshaw told him "that he could smell alcohol coming from the car." (Id. at 21.) Officer Upshaw testified, in response to questions, that he had smelled PCP on one prior occasion and that this smell was the same. (Id. at 7-8.) Thus, the testimony of both officers plainly indicated that they primarily associated the smell with that of alcohol, although they also

- 3 -

testified that it was also similar to the smell of PCP, and their testimony is somewhat imprecise as to the strength of the odor.[1]

The government's brief relies even more heavily on its assertion that the paper bag containing the drugs was found in plain view on the passenger seat floorboard. (Aple B. 10-11 (stating that the bag "was easily detectable and in plain view by anyone standing outside the vehicle"); id. at 10-11 ("Defendant's claim that he was unaware of the presence of the drugs or that same did not belong to him is belied by the discovery of the brown bag containing phencyclidine in virtually plain view. Again, the soaked brown bag . . . could be . . . seen by anyone standing near the passenger side outside the car. The observation of drugs in plain view is a compelling circumstance from which knowledge may properly be inferred.") (emphasis added, citation omitted).) This assertion is contrary to the evidence presented at the hearing, which was that the bag was "underneath the passenger seat sticking out" and that a police officer pulled it out from under the seat onto the floorboard with his fingers. (Tr. 1/22/02 at 6, 20.) Although Officer Upshaw did testify that the bag was in plain sight when he first noticed it – the testimony cited by the government in support of its plain view assertion – he also testified that Officer Holland was the first to discover the bag. Significantly, Officer Upshaw's testimony indicates that he did not notice the bag when he initially approached the passenger window and

---

[1] This testimony is entirely consistent with Holmes's testimony that he noticed the smell in the vehicle but believed that it was caused by alcohol, noting that the driver was heavily intoxicated and while driving had been drinking out of a paper cup that he had taken and thrown out the window. (Id. at 30-31; 33-36 (cross-examination).)

removed Holmes from the vehicle, despite the fact that he presumably paid special attention to that area of the car because the very reason he gave for first approaching the passenger side of the vehicle was his concern that Holmes was reaching below the seat as he approached. Officer Holland testified after Officer Upshaw, specifically stating that he "d[id] know of a couple of things that . . . I have a little bit different opinion about" than Officer Upshaw. (Tr. 1/22/2002 at 20.) Officer Holland explained that, when he stuck his head inside the vehicle, "I could see the end of the brown paper bag underneath the passenger seat sticking out. I pulled it with my fingers about six, eight inches, pulled it into the floorboard of the car." (Id.) Furthermore, the record is clear that the bag was just a small paper bag like one that would be obtained from a grocery store for minimal items and there was no testimony that the appearance of the bag was associated with drugs or that drugs could be seen inside the bag before it was picked up by the officer and inspected. Thus, the government's plain view argument is contradicted by the record.

We are troubled by the Assistant United States Attorney Ross N. Lillard's mischaracterization of the evidence regarding plain view of the drugs. The question remains, however, whether the evidence was sufficient to find by a preponderance of the evidence that Holmes possessed the PCP. In addition to the aforementioned testimony regarding the visibility and smell of the drugs and the dampness of the bag, the other important piece of evidence against Holmes was the testimony of Officer Upshaw that Holmes "was bending as if he was reaching for something under the seat" as Upshaw

- 5 -

approached the vehicle.  (Tr. 1/22/2002 at 5.)  Officer Upshaw testified that, at this same time, Holmes also was pushing the driver as the two were engaged in a "physical confrontation inside the car."  (Id.)  On direct examination, Officer Holland stated that Officer Upshaw had told him the two were scuffling but specifically denied that Upshaw had told him that he (Upshaw) saw Holmes reaching under the seat.  (Id. at 21.)  The stop occurred on the street at approximately midnight.  (Id. at 4.)

Although we regard this issue as close, we conclude that reversal is not warranted because the evidence was sufficient to permit the district court to conclude by a preponderance of the evidence that Holmes possessed PCP.  "While we review the record de novo, we must draw all reasonable inferences in the light most favorable to the government, and we may not consider the credibility of witnesses or weigh the trial evidence."  United States v. Wilson, 244 F.3d 1208, 1219 (10th Cir. 2001).  In light of the existence of testimony that Holmes reached under the seat after the vehicle was stopped and that the vials containing the PCP were under his seat and apparently had been broken only moments before the stop, we cannot say that no rational finder of fact could have found by a preponderance of the evidence that Holmes possessed the PCP in violation of the terms of his supervised release.  See id.

Accordingly, the decision below is AFFIRMED.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge