**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

No. 99-6209

DON ALAN KEELING, also known
as D. A. Keeling,

       Defendant - Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-98-99-M)

Richard D. Biggs (and Marcia G. Shein, with him on the briefs), Shein & Biggs,
Atlanta, Georgia, for Plaintiff - Appellee.

M. Jay Farber, Assistant United States Attorney (and Patrick M. Ryan, United
States Attorney and Daniel G. Webber, Jr., United States Attorney, on the briefs),
Oklahoma City, Oklahoma, for Defendant - Appellant.

Before **SEYMOUR**, Chief Judge, **KELLY**, and **HENRY**, Circuit Judges.

**KELLY**, Circuit Judge.

      Defendant-Appellant, Don Alan Keeling, appeals his sentence for

possession with intent to distribute approximately 150 pounds of marijuana

("Count 6"), 21 U.S.C. § 841(a)(1), and use of a communication facility to facilitate a conspiracy to possess with intent to distribute marijuana ("Counts 8-21 and 23-31"), 21 U.S.C. § 843(b). In a jury trial, Mr. Keeling was acquitted of five other possession with intent to distribute counts, alleging various quantities, and a conspiracy count, 21 U.S.C. § 846. He was sentenced to 121 months as to Count 6 and 48 months for each of Counts 8-21 and 23-31, to be served concurrently, and a fine of $5000 with a special assessment of $2400. Moreover, in accord with the jury's verdict, Mr. Keeling is required to forfeit $240,000. The district court also imposed a supervised release term of five years on Count 6 and one year on Counts 8-21 and 23-31, to be served concurrently.

On appeal, Mr. Keeling argues that he is entitled to re-sentencing on the grounds that the district court (1) improperly imposed a five year term of supervised release, based on its erroneous conclusion that 21 U.S.C. § 841(b)(1)(C) was inapplicable to his ultimate punishment; (2) improperly calculated relevant conduct in fashioning his sentence by including (i) a quantity (2,494) of marijuana plants that were outside the scope of his involvement in the underlying crimes, and (ii) drug amounts from acquitted counts, using an improper standard; and (3) improperly adjusted his sentence upward for obstruction of justice, U.S.S.G. § 3C1.1, given that his actions did not impede the government's access to forfeitable assets. Additionally, Mr. Keeling (4)

challenges the forfeiture amount on the grounds that the amount should have been calculated according to his profit rather than the purchase price, and (5) contends that in light of Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), his sentence must be vacated and the case remanded for a sentence on Count 6 of not more than 60 months.

1. Supervised Release

The government advises that in light of United States v. Santos, 195 F.3d 549, 552-53 (10th Cir. 1999) (holding that mandatory sentencing provisions of § 841(b) are to be calculated solely with respect to the drug quantities involved in the offense of conviction), the statutory minimum term of supervised release for Mr. Keeling for Count 6 is three years. Thus, the parties agree that Mr. Keeling's sentence is incorrect in this regard, and a limited remand must be made.

2. Calculation of Base Offense Level

a. Inclusion of 2,494 Plants in Relevant Conduct Calculation

Mr. Keeling argues that the district court impermissibly included 2,494 plants from a crop grown by a third party ("Mr. Hodges") as relevant conduct in determining his sentence. Mr. Keeling contends that the district court relied on incredible evidence, namely, Mr. Hodges' testimony, to determine that this crop was grown with Mr. Keeling in mind, and was intended for his receipt. Mr. Keeling argues that the district court relied improperly on the representation of

Special Agent Creson to evaluate Mr. Hodges' credibility. Moreover, Mr. Keeling claims that Mr. Hodges' testimony was fraught with inconsistency. Thus, Mr. Keeling argues that the quantity of marijuana in question is not attributable to him for purposes of relevant conduct.

"We review questions of law regarding application of the Sentencing Guidelines de novo. . . . [and] findings of fact under the clearly erroneous standard, mindful of our obligation to give 'due regard' to the district judge's determinations of the credibility of witnesses." United States v. Wiseman, 172 F.3d 1196, 1217-18 (10th Cir.) (citation omitted), cert. denied, 120 S. Ct. 211 (1999). Moreover, "[w]e will not disturb a sentencing court's factual findings unless they are 'without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made.'" United States v. Moore, 130 F.3d 1414, 1416 (10th Cir. 1997) (citation omitted). The government must prove, by a preponderance of the evidence, the amount of drugs attributable for purposes of the Sentencing Guidelines. See id. Under present law, a sentencing court may consider drug quantities from uncharged or acquitted conduct. In order to constitute relevant conduct under U.S.S.G. § 1B1.3(a)(2), the court must find (1) the offense in question included conduct set forth by §§ 1B1.3(a)(1)(A) and (B); (2) the offense must be groupable with the offense of conviction; and (3) the offense must be "'part of the same

course of conduct or common scheme or plan.'" United States v. Taylor, 97 F.3d 1360, 1363 (10th Cir. 1996) (quoting U.S.S.G. § 1B1.3(a)(2)). In the instant case, these factors are all satisfied. The trial court explicitly found that the 2,494 plants were grown by Mr. Hodges to be received by Mr. Keeling. See Aplt. App. at 151-152. The court made this determination on the strength of the testimony at trial and the statements by Special Agent Creson. While Mr. Keeling challenges the credibility of Mr. Hodges, who testified that the crop was for Mr. Keeling, we must defer to the district court's findings. See Wiseman, 172 F.3d at 1218. Despite the fact that Mr. Keeling was acquitted of conspiracy, the trial court is empowered to determine, as it did, by a preponderance of the evidence, that the marijuana from the 1997 crop was reasonably foreseeable by Mr. Keeling and "part of the conspiratorial objectives in furtherance of the conspiracy." Aplt. App. at 150; see also, Moore 130 F.3d at 1416 (noting that acquitted conduct may be evaluated as relevant conduct for sentencing purposes). Thus, Mr. Keeling's claim fails.

b.     Inclusion of Drug Quantities from Dismissed Counts

We likewise reject Mr. Keeling's claim that the trial court was not entitled to consider drug quantities from acquitted counts on the ground that the jury evaluated the amount of drugs involved under both a reasonable doubt and preponderance standard for purposes of determining forfeiture. A review of the

record shows that the trial court was correct in finding that the jury was properly instructed only to consider drug quantities from convicted counts for purposes of forfeiture. See Aplt. App. 152-153. Additionally, the government's contention that it is for the sentencing court, not the jury, to determine relevant conduct remains true after Apprendi, provided that an enhanced penalty based upon additional relevant conduct quantity does not exceed the range authorized by the count of conviction. See United States v. Doggett, 230 F.3d 160, 166 (5th Cir. 2000) United States v. Meshack, 225 F.3d 556, 576 (5th Cir. 2000); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000), cert. denied, __ S. Ct. __, (U.S. Nov. 27, 2000) (No. 00-6746).

3.    Obstruction of Justice Enhancement

Mr. Keeling next argues that the trial court erroneously assessed a two-level increase for obstruction of justice, U.S.S.G. § 3C1.1, because he executed various quitclaim deeds and mortgaged a property, all of which were designated as substitute assets for purposes of forfeiture. He claims that his actions were not calculated to circumvent the government's potential collection of forfeiture. Moreover, Mr. Keeling notes that his actions could not have had this effect, given that the government's interest in the property would be superior to subsequent purchasers because of the previously filed notice of lis pendens.

Mr. Keeling argues that he undertook these actions to raise funds to pay the

forfeiture that he anticipated would result from his conviction. The district court, noting the closeness of the question, ultimately did not find Mr. Keeling's arguments persuasive. The timing of the conveyances, the fact that the transactions involved Mr. Keeling's girlfriend and father, and Mr. Keeling's incomplete explanation as to how simple quitclaims would raise the anticipated forfeiture amount, persuaded the district court to find obstruction of justice. While reasonable minds could differ on the import of these facts, given the deferential standard of review, we conclude that the district court did not clearly err. See United States v. Hankins, 127 F.3d 932, 934 (10th Cir. 1997). As to Mr. Keeling's remaining argument, we reiterate our holding in Hankins that factual impossibility is no defense to § 3C1.1. See id.

4. Forfeiture

Mr. Keeling argues that he should only be responsible in forfeiture for the amount of the profits rather than the gross proceeds of his narcotics enterprise. He contends that the majority of the gross proceeds went to his supplier. Because Mr. Keeling did not properly preserve this issue for review, we evaluate his claim according to a plain error standard of review. Under any standard of review, however, Mr. Keeling's claim is utterly without merit. As the Fourth Circuit noted after surveying the legislative history and policies undergirding 21 U.S.C. § 853:

> Were we to read proceeds in § 853 to mean only profits, . . . we would create perverse incentives for criminals to employ complicated accounting measures to shelter the profits of their illegal enterprises. The purpose of forfeiture is to remove property facilitating crime or property produced by crime – all of which is tainted by the illegal activity.

United States v. McHan, 101 F.3d 1027, 1042 (4th Cir. 1996). We agree with this analysis and conclude that for purposes of § 853, "proceeds" contemplates gross proceeds and not merely profits. Accordingly, Mr. Keeling's claim for relief on this ground fails.

5.    Apprendi Challenge

At oral argument, Mr. Keeling raised the issue of the applicability of the Apprendi decision and we requested supplemental briefs. Under § 841(b)(1)(C) and Santos, the statutory range of punishment for Count 6 based upon a quantity of 150 pounds (68.18 kilograms) is up to 20 years imprisonment, a fine not to exceed $1,000,000, and not less than 3 years supervised release. Section 841(b)(1)(C) applies to quantities of marijuana of at least 50, but less than 100 kilograms. In the absence of a jury-determined quantity, Mr. Keeling argues that the appropriate statutory range for an undetermined amount of marijuana should apply, specifically, § 841(b)(1)(D)--up to 5 years imprisonment, a fine not to exceed $250,000, and at least 2 years supervised release.

In Apprendi, the Supreme Court held, based upon the Sixth and Fourteenth

Amendments that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. at 2362-63. The Court invalidated a procedure required by a New Jersey statute that increased the maximum term authorized by certain offenses from 10 to 20 years if the sentencing judge found, by a preponderance of the evidence, that the defendant "'acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" Apprendi, 120 S. Ct. at 2351 (quoting N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 2000)).

Apprendi was influenced by Jones v. United States, 526 U.S. 227 (1999), which determined, based upon statutory intent, that a finding of "serious bodily injury," required to impose a certain penalty under the federal carjacking statute, 18 U.S.C. § 2119, was an element of the offense, not merely an enhancement. Jones, 526 U.S. at 252. As an element, it "must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." Id. After Jones, we adhered to our position that the quantity determination associated with various penalties under § 841(b) was entirely a matter for the sentencing judge. See United States v. Jones, 194 F.3d 1178, 1183-84 (10th Cir. 1999). However, the Supreme Court granted certiorari, vacated the judgment and remanded in light

of Apprendi.  See Jones v. United States, 120 S. Ct. 2739 (2000).

The government concedes that Apprendi applies to the drug quantities used to determine punishment in § 841(b), and to this case because it is pending on direct review and not yet final.  See Griffith v. Kentucky, 479 U.S. 314, 321 n.6, 328 (1987).  We agree with our sister circuits that Apprendi applies to § 841(b). See United States v. Angle, 230 F.3d 113, 123 (4th Cir. 2000); Doggett, 230 F.3d at 164 (5th Cir.); United States v. Rogers, 228 F.3d 1318, 1326-27 (11th Cir. 2000); United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000); Aguayo-Delgado, 220 F.3d at 932-33 (8th Cir.).  As noted, Count 6 of the indictment charged "approximately 150 pounds," however, the government concedes that drug quantity was not presented to the jury as an element of the offense with the requirement of proof beyond a reasonable doubt.  Mr. Keeling did not object to the instruction given.  Because drug quantity matters, this case cannot be resolved on the principle that Apprendi does not require reversal where a defendant is sentenced to less than the maximum sentence supported by the jury verdict without reference to drug quantity.

To notice plain error under Fed. R. Crim. P. 52(b), the error must (1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect substantial rights, in other words, in most cases the error must be prejudicial, i.e. it must have affected the outcome of the trial.  See United States v. Olano, 507 U.S. 725,

733-34 (1993). Where the law was settled at the time of trial and clearly contrary to the law on appeal, it is sufficient if the error is plain on appeal. See Johnson v. United States, 520 U.S. 461, 468 (1997). Given plain error that affects substantial rights, an appellate court should exercise its discretion and notice such error where it either (a) results in the conviction of one actually innocent, or (b) "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). Even if the first three elements of the plain error test are satisfied, where the evidence on a misdescribed or omitted element of the offense is overwhelming, the fourth element, that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings, is not. See Johnson, 520 U.S. at 470.

Plain error cases have been steadfast in the requirement that the error be judged against a complete record. See United States v. Young, 470 U.S. 1, 16 (1985). Accordingly, we exercised our discretion and obtained the complete record, rather than rely upon the excerpts contained in the appendix. A review of that record confirms that the jury was not instructed that quantity was an element of Count 6, I R. doc. 59, Instr. 37. The jury was instructed that the government was not required to prove the particular amount of controlled substance alleged in

- 11 -

the indictment.[1]

Given the applicability of <u>Apprendi</u> to § 841(b), the first two requirements for plain error are met. A jury instruction which omitted quantity as an element in these circumstances is actual error that is now plain and obvious. Although the government urges us to assess plain error in light of various admissions by the Defendant in the course of his sentencing, we decline to do so as did the court in <u>Nordby</u>, 225 F.3d at 1061 n.6, because the assessment of prejudice must focus on whether the error affected the jury's verdict. Likewise, we decline to consider the forfeiture proceeding in assessing prejudice with its focus on quantification of a forfeiture amount and different standard of proof, i.e. preponderance of the evidence.

Where the jury has not found quantity beyond a reasonable doubt and quantity is integral to punishment, a defendant can demonstrate prejudice if the evidence suggests a reasonable doubt on quantity. See <u>Nordby</u>, 225 F.3d at 1061.

---

[1] <u>Amount of Controlled Substance Involved</u>

Certain counts of the Indictment allege that a particular amount of controlled substance was involved. The evidence in the case need not establish that the amount or quantity of controlled substance was as alleged in the indictment, but only that a measurable amount of the controlled substance was in fact the subject of the acts charged in the indictment.

I R. Doc. 59, Instr. 23.

This case does not require us to decide the precise contours of the the third element of the plain error test given this record.

In pertinent part, the indictment charged Mr. Keeling with possession with intent to distribute three loads of marijuana with different quantities (Count 5, 80 pounds; Count 6, 150 pounds; and Count 7, 30 pounds), all in October 1996. As noted, he was acquitted of Counts 5 and 7. Mr. Hodges' trial testimony places the quantity of the pertinent marijuana shipment in Count 6 at 150 pounds based upon his notes that were seized by the government during a search of his residence after his arrest. See Aplee. Supp. App. 29, 45-46 (Trial Tr. at 532, 548-49); Trial Tr. at 528. The notes were held in the custody of the FBI and admitted at trial. Trial Tr. at 527-29.

Mr. Keeling argues that Mr. Hodges' testimony is uncorroborated, and that it is not worthy of belief because it was inconsistent with a smaller quantity stated at Mr. Hodges' debriefing after his arrest. At trial, Mr. Keeling attempted to impeach the testimony on the latter basis, however, Mr. Hodges testified that he did not have access to his notes at the debriefing because they had been seized. See Aplee. Supp. App. 46 (Trial Tr. at 549). Moreover, at trial, Mr. Hodges explained his system and the entries associated with Mr. Keeling.

One Mr. Anderson testified that between 1991 and 1994 he transported seven loads of marijuana for Mr. Keeling and continued to transport for him in

- 13 -

1996 when Mr. Hodges was the supplier. Trial Tr. at 476, 484. Although Mr. Anderson could not remember the quantities associated with the marijuana loads he transported claiming it was of little concern to him, he guessed the most recent trip he made in October 1996 could have been 70 pounds, but "30 pounds was way too small." Id. at 491-92. Mr. Anderson testified that Mr. Keeling gave him the money to buy and helped him select a small pickup truck as a marijuana transport vehicle. Id. at 486. In 1996, Mr. Keeling partially subsidized the acquisition of a larger truck for the same purpose. Id. at 487. Over objection, a tape was played containing admissions by Mr. Keeling that he had been dealing marijuana since high school; he was 45 at the time of trial. See Trial Tr. at 369-72.

In view of the record, it is doubtful that Mr. Keeling can satisfy his burden of persuasion with respect to prejudice, see Olano, 507 U.S. at 734. Notwithstanding that Mr. Keeling argued for a judgment of acquittal and before the jury that there was no credible proof as to the 150-pound quantity contained in Count 6, Trial Tr. at 593-95, 635, 639-40, the evidence of Mr. Keeling's involvement with Mr. Hodges' growing operation over time was overwhelming. The explanation Mr. Hodges gave for the discrepancy between an amount mentioned in his debriefing and the 150 pounds based upon his notes that he later obtained, went unchallenged. Moreover, Mr. Anderson's testimony is highly

corroborative of Mr. Hodges' testimony about the  relationship between Mr. Hodges and Mr. Keeling.  Because the evidence is overwhelming, we hold that the fourth element of the plain error test cannot be satisfied.  Although we acknowledge that we have found plain error in circumstances where an intervening Supreme Court decision changed the definition of an element, we did so based upon a conclusion that the evidence was not overwhelming, and the jury instruction given did not focus the jury's attention on a part of the instruction that would have supported the conviction.  See United States v. Spring, 80 F.3d 1450, 1466 (10th Cir. 1996).  The former cannot be said of this case.

**AFFIRMED** in part; **REMANDED** in part for limited resentencing on the issue of supervised release.