**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 4 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

vs.

ANTHONY DARNETT OSBORNE,

     Defendant - Appellant.

No. 99-2299
(D.C. No. CR-98-989-LH)
(D.N.M.)

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

vs.

KOREY WILLIAMS SANDUSKY,

     Defendant - Appellant.

No. 99-2300
(D.C. No. CR-98-989-2-LH)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **PORFILIO**, and **KELLY**, Circuit Judges.

Defendants-Appellants Anthony Osborne and Korey Sandusky were

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

convicted of conspiracy to possess, with intent to distribute, more than 100 kilograms of marijuana. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846. Mr. Sandusky was sentenced to 110 months imprisonment and 4 years supervised release. Mr. Osborne was sentenced to 97 months imprisonment and 4 years of supervised release. They now appeal their convictions and sentences. Since the cases were tried together and the operative facts are the same, we have treated both cases together for purposes of appeal. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

I. Background

On December 3, 1998, Karen Wills was driving a white Toyota pickup truck eastbound on Interstate 40 in Quay County, New Mexico when she was pulled over by a county sheriff. II R. at 7-10. Ms. Wills was en route to Detroit, Michigan, to deliver the truck for Mr. Osborne and Mr. Sandusky, id. at 131; V R. at 78, who were following Ms. Wills in a Ford Mustang rental car driven by Mr. Sandusky. II R. at 16, 63; V R. at 13. The sheriff noticed that the truck bed was unusually shallow and suspected that the bed had been altered to transport drugs. II R. at 14. He asked Ms. Wills if she was transporting drugs and she stated that she was not. Id. at 16. Ms. Wills then consented to a search of the truck. Id. at 16-17. Approximately 298 pounds of packaged marijuana was

- 2 -

found in a hidden compartment underneath the truck bed.     Id. at 20.  The packages were examined for fingerprints.  V R. at 115.  Neither Ms. Wills, Mr. Osborne, nor Mr. Sandusky's fingerprints were found on any of the packages.     Id. In the course of the search, the sheriff radioed ahead to a local village police chief and asked him to stop the Mustang.  II R. at 19.  A consent search of the vehicle revealed no evidence of drug trafficking.     Id. at 63-65, 69.

Ms. Wills was charged with possession and conspiracy to possess, with intent to distribute, more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, 18 U.S.C. § 2.  Based on Ms. Wills' statement to a Drug Enforcement Agency Officer, Mr. Osborne and Mr. Sandusky were also charged with conspiracy.  I R. doc. 8.  Ms. Wills pled guilty,     id. doc. 66, and testified at Mr. Osborne's and Mr. Sandusky's trial.  II R. at 85-134; V R. at 4-81.  We further develop the record below as is necessary for our disposition.

## II.  Discussion

Mr. Osborne asserts that the district court erred in instructing the jury on "deliberate ignorance."  Mr. Sandusky argues that the evidence was insufficient to support his conviction.  Both Mr. Osborne and Mr. Sandusky contend that they were denied due process under    Apprendi v. New Jersey   , 530 U.S. 466 (2000), and that the district court erred in enhancing their sentences under U.S.S.G. §

3B1.1 for their role as organizers.

A.    "Deliberate Ignorance" Instruction

The jury was instructed that "knowingly," as the term was used in the jury instructions, meant that "the act was done voluntarily and intentionally" or that Mr. Osborne was deliberately ignorant by "blind[ing] himself to the existence of a fact." [1]  I R. doc. 51 (jury instruction no. 10).  Mr. Osborne argues that this instruction constitutes reversible error because there was no evidence that he deliberately avoided knowledge of the conspiracy.

Because Mr. Osborne did not object to this instruction at trial, we review for plain error.  United States v. Concha, 233 F.3d 1249, 1251 (10th Cir. 2000).  "To notice plain error under Fed. R. Crim. P. 52(b), the error must (1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect substantial rights, in other words, in most cases the error must be prejudicial, i.e., it must

---

[1]  In its entirety, the instruction read:

> The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.
> You may find that a defendant deliberately closed his eyes to what would otherwise have been obvious to him.  While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

I R. doc. 51 (jury instruction no. 10).

have affected the outcome of the trial." United States v. Keeling, 235 F.3d 533, 538 (10th Cir. 2000). Plain error is exceedingly difficult to assert in this context. In United States v. Hanzlicek, 187 F.3d 1228 (10th Cir. 1999), where the defendant had objected to the deliberate ignorance instruction, we held that a properly-defined deliberate ignorance instruction, even when there is insufficient evidence of deliberate ignorance, is harmless error where the jury also is instructed on a theory of actual knowledge and there is sufficient evidence of actual knowledge. Id. at 1234-36. While we have cautioned the district courts that a deliberate ignorance instruction is rarely appropriate and that it should not be given indiscriminately, id. at 1233, the instruction does not constitute reversible error when there is evidence of actual knowledge.

Here, the jury was instructed on a theory of actual knowledge and there is sufficient evidence to support Mr. Osborne's actual knowledge of the conspiracy. Where possible, Mr. Osborne and Mr. Sandusky consistently avoided any direct connection to the truck, supporting the reasonable inference that they were aware that the truck contained or would contain marijuana. Mr. Osborne and Mr. Sandusky paid cash for the truck. V R. at 100-01. They also negotiated the purchase, id. at 85-97, but the purchase was executed in Ms. Wills' name. II R. at 98-109; V R. at 31-32, 97. Moreover, Mr. Osborne and Mr. Sandusky refused to disclose their identity until it became necessary to take possession of the truck.

II R. at 105; V R. at 86, 99.  Similarly, when the truck was repaired, either Mr. Osborne or Mr. Sandusky paid for the repair, but Ms. Wills signed the service order and receipt.  II R. at 122-23.

On the day of purchase, Mr. Osborne took possession of the truck and Ms. Wills did not see the truck for approximately 30 days thereafter.  II R. at 110.  The truck did not have a tailgate.  V R. at 97.  Some time between the purchase of the truck and December 2, Mr. Osborne spoke to someone at a body shop.  Id. at 51.  At the time of Ms. Wills' arrest, the truck was equipped with a tailgate as well as the hidden compartment in which the marijuana was found.  II R. at 18.

Just days before the trip to Detroit, Mr. Osborne and Mr. Sandusky were anxious to have the truck repaired immediately, and refused to leave the truck overnight at the repair shop to be repaired the following day.  Id. at 114-16.  In fact, when one particular shop told Mr. Osborne and Mr. Sandusky that the truck could not be repaired that same day, they attempted to pay a mechanic $200 in cash.  Id. at 116.  When the mechanic refused, the offer "kept going up."  Id.  Also significant is the fact that the truck was parked some distance from, but within sight of, Mr. Osborne and Mr. Sandusky's apartment.  Id. at 118.  Mr. Osborne and Mr. Sandusky looked out the window at the truck every one to two hours.  Id.

Immediately before leaving for Detroit, Ms. Wills noticed that Mr. Osborne

and Mr. Sandusky "weren't acting normal," and that Mr. Sandusky was "acting funny." V R. at 75. Furthermore, immediately before and during the trip to Detroit, neither Mr. Sandusky nor Mr. Osborne drove or rode in the truck. II R. at 119, 131. Throughout the trip to Detroit until Ms. Wills' arrest, either Mr. Osborne or Mr. Sandusky paid for all of Ms. Wills' expenses; id. at 133; V R. at 5, 9; however, the motel room in which they stayed was placed in Ms. Wills' name, and she signed the receipt. V R. at 7-9. Mr. Osborne and Mr. Sandusky routinely followed Ms. Wills in the Mustang. Id. at 76.

After the sheriff stopped Ms. Wills, Mr. Osborne and Mr. Sandusky passed the sheriff in the Mustang and "were looking at [him] pretty hard" and "continued looking at [him] . . . ." II R. at 13. When stopped by a police officer several miles down the highway, Mr. Osborne and Mr. Sandusky disavowed any knowledge of the very truck they had purchased just one month prior. Id. at 64.

The evidence is plainly sufficient to establish actual knowledge by Mr. Osborne. A conviction may be based solely upon circumstantial evidence and reasonable inferences drawn therefrom. United States v. Sanders, 240 F.3d 1279, 1281 (10th Cir. 2001). Moreover, the mere fact that the circumstantial evidence consisted primarily of Ms. Wills' testimony does not render that evidence insufficient; the jury was properly instructed to weigh her testimony as an accomplice with great caution and care. Cf. United States v. Gardner, 244 F.3d

784, 789-90 (10th Cir. 2001).

B.      Sufficiency of the Evidence

Mr. Sandusky argues that there was insufficient evidence to support his conspiracy conviction.  We review the evidence de novo to determine whether, after viewing both direct and circumstantial evidence and the reasonable inferences drawn therefrom in a light most favorable to the government, any rational trier of fact could have found Mr. Sandusky guilty beyond a reasonable doubt.  Sanders , 240 F.3d at 1281.  In making this determination, we do not weigh conflicting evidence or examine the credibility of the witnesses.        Id.  "While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference."  United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995) (citations and internal quotations).  A reasonable inference is one that "flows from logical and probabilistic reasoning . . . ."  Id.   There must be a "reasonable probability that the conclusion flows from the proven facts."        Id. (citation and internal quotations omitted).

"To prove a conspiracy in violation of 21 U.S.C. § 846, the evidence must establish:  (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary

involvement, and (4) interdependence among the alleged conspirators." United States v. Heckard, 238 F.3d 1222, 1229 (10th Cir. 2001) (citation and internal quotations omitted). "An agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994) (citation omitted). As we explained in Jones, "[t]he government must prove guilty knowledge: an implicit or explicit agreement to enter into a known conspiracy with a known objective." 44 F.3d at 865.

Mr. Sandusky secured the vehicle in which the drugs were found. With Mr. Osborne, Mr. Sandusky negotiated the purchase of the truck and was in possession of over $11,000 cash tendered for the purchase. Cf. Jones, 44 F.3d at 870. He then disavowed any knowledge of the truck that he had in fact purchased one month prior, strongly suggestive of guilty knowledge. Cf. id. at 870. A rational trier of fact could easily conclude that Mr. Sandusky agreed with Ms. Wills and Mr. Osborne to transport drugs and that he knowingly and voluntarily participated in the conspiracy, the object of which he had knowledge. Mr. Sandusky was not only aware that the truck contained marijuana, but was also an active participant in the scheme to transport it to Detroit. The steps taken in this marijuana transport operation illustrate the interdependence among the

conspirators.

Other evidence supports this conclusion that Mr. Sandusky was involved in a conspiracy. We have already recounted much of the evidence in our analysis of the "deliberate ignorance" instruction. Additionally, Mr. Sandusky appeared to take evasive action designed to deflect attention away from Ms. Wills when she was pulled over. As the sheriff attempted to catch up with Ms. Wills in the truck, Mr. Sandusky abruptly changed lanes in front of the sheriff, forcing him to brake to avoid a collision with the Mustang. II R. at 8. Mr. Sandusky, now directly in front of the officer, "was driving fast and then slowing down, driving fast and then slowing down." Id. at 9. The left side of the Mustang was traveling on the inside shoulder of the interstate. Id. at 10. This evidence also supports the jury's implicit finding of actual knowledge. Contrary to Mr. Sandusky's suggestion, the government was not required to present evidence that he modified the truck bed, purchased the marijuana, placed it in the truck, and negotiated the marijuana purchase. Aplt. Br. (Sandusky) at 13-15.

C.     Apprendi

1.     Drug Quantity

Mr. Osborne and Mr. Sandusky were each charged with conspiring to possess, with the intent to distribute, "more [than] 100 kilograms of Marijuana," in violation of 21 U.S.C. § 841(b)(1)(B). I R. doc. 8, at 1. The quantity of the

marijuana found in the truck was not disputed at trial.  However, the quantity was not submitted to the jury as an element of the offense which the jury was required to find beyond a reasonable doubt.     Id. doc. 50 (jury instruction no. 9).  Neither Mr. Osborne nor Mr. Sandusky objected to this instruction.  V R. at 113.  At sentencing, the district court found that the amount of marijuana found in the truck was 135.68 kilograms.  III R. at 20 (Osborne sentencing); IV R. at 23 (Sandusky sentencing).  Mr. Osborne and Mr. Sandusky argue that they were sentenced in violation of    Apprendi .  We disagree.

Since neither Mr. Osborne nor Mr. Sandusky objected to the jury instructions, we review their     Apprendi  challenges  for plain error.   Keeling , 235 F.3d at 538.  In    Apprendi , the Supreme Court "established the rule that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"     Heckard , 238 F.3d at 1234 (quoting Apprendi , 530 U.S. at 490).    Apprendi  "presents a new rule of constitutional criminal procedure, and thus should be applied retroactively to cases pending on direct review."   Id.  Apprendi  applies to § 841(b).    Keeling , 235 F.3d at 538.

### i.    Mr. Osborne's Sentence

The district court did not commit plain error under     Apprendi .  Mr. Osborne's sentence did not exceed the statutory maximum of the most lenient

- 11 -

provision applicable to marijuana possession offenses: § 841(b)(1)(D). Under § 841(b)(1)(D), which applies to offenses involving less than 50 kilograms of marijuana, Mr. Osborne could have received 10 years imprisonment and 4 years of supervised release because he had previously been convicted of a felony drug offense. III R. at 20. Therefore, the district court's failure to submit the quantity of marijuana as an element of Mr. Osborne's offense to the jury was not error because his sentence of 97 months imprisonment and 4 years of supervised release did not exceed the lowest possible statutory maximum. United States v. Wilson, 244 F.3d 1208, 1215 n.4 (10th Cir. 2001).

ii.    Mr. Sandusky's Sentence

Because Mr. Sandusky had no prior drug felony conviction, his sentence of 110 months imprisonment and 4 years of supervised release exceeded the statutory maximum under § 841(b)(1)(D). As in Keeling, Mr. Sandusky argues that under Apprendi he should have been sentenced under § 841(b)(1)(D), thereby receiving only 5 years' imprisonment and as few as 2 years of supervised release. We agree that the district court committed plain error in failing to submit quantity to the jury. See Wilson, 244 F.3d at 1215 n.4. We do not, however, notice the error. Mr. Sandusky was not actually innocent; nor did the error seriously affected the "fairness, integrity or public reputation of judicial proceedings." Keeling, 235 F.3d at 538 (quotations and citation omitted). At

- 12 -

trial, there was uncontroverted, overwhelming testimony that approximately 298 pounds of marijuana were found in the truck. Cf. id. at 538-40. There was no evidence adduced at trial to raise a reasonable doubt as to quantity. Cf. id.

2. Mr. Sandusky's Leadership Role

As explained in more detail in Section D infra, Mr. Sandusky's and Mr. Osborne's offense levels were increased 2 points for their leadership role in the crime. Because this sentencing factor was not submitted to the jury, Mr. Sandusky argues that he was sentenced in violation of Apprendi. In light of our holding above that Mr. Sandusky was properly sentenced to 110 months imprisonment and could have been sentenced to 120 months, it follows that the 2-level enhancement did not increase his sentence beyond the statutory maximum. Accordingly, "his sentence does not run afoul of the rule in Apprendi." United States v. Sullivan, 242 F.3d 1248, 1257 (10th Cir. 2001).

D. Sentence Enhancements

At sentencing, the district court adopted the factual findings in the presentence reports and found that Mr. Osborne and Mr. Sandusky were organizers, managers, and supervisors in the conspiracy. III R. at 20; IV R. at 18, 23. The district court therefore increased Mr. Osborne's and Mr. Sandusky's offense levels by 2 points pursuant to U.S.S.G. § 3B1.1(c). III R. at 20 (adopting guideline applications in presentence report); IV R. at 23 (adopting guideline

- 13 -

applications in presentence report .     Mr. Osborne and Mr. Sandusky argue that the district court erred concluding that they were organizers.

We review the district court's determination that a defendant is an organizer for clear error.    United States v. Anderson   , 189 F.3d 1201, 1211 (10th Cir. 1999).  One may be an organizer based upon the planning of a criminal scheme or by controlling others.     Id. at 1270.  More than one participant in the criminal activity can qualify as an organizer.  U.S.S.G. § 3B1.1, cmt. 4.

The district court's ultimate finding that Mr. Osborne and Mr. Sandusky were "organizers" is amply supported by the evidence.  We reject the notion that the information upon which the court relied is not sufficiently reliable.  The district court found Mr. Osborne directed the conspiracy and that Ms. Wills was Mr. Osborne's "pawn."  III R. at 19.  Mr. Osborne purchased the truck and rented the Mustang used to transport the marijuana to Detroit.  Mr. Sandusky orchestrated the purchase of the truck and oversaw the repair of the truck.  We see no clear error in the district court's finding that Mr. Osborne and Mr. Sandusky "determined the path, the course that the vehicles would follow, who would go in the lead and who would be following.  They determined where they would stay along the way."  IV R. at 18.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge