F I L E D
**United States Court of Appeals
Tenth Circuit**

**JUN 18 2002**

**PATRICK FISHER
Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID BLOOMGREN,

    Defendant - Appellant.

No. 00-8036
(D.C. No. 99-CR-135-J)
(D. Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.

Defendant-Appellant David Bloomgren appeals his convictions and sentences for conspiring to distribute and possess with intent to distribute methamphetamine, possession with intent to deliver methamphetamine, and being a convicted felon in possession of firearms. He raises four issues on appeal. First, he contends that perjured testimony went uncorrected by the Government at trial, and therefore the district court abused its discretion in denying his motion for a new trial. Second, he asserts that the Government failed to preserve or

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

collect actual or potentially exculpatory evidence, and therefore the district court abused its discretion in denying his motion to dismiss or for a new trial on those grounds. Third, he alleges that in light of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), his drug sentences should be reversed because the jury was not instructed that they had to find drug quantity beyond a reasonable doubt. Finally, Appellant argues that the Sentencing Commission has not promulgated guidelines to assist the court in ordering community restitution, thereby violating the command of 18 U.S.C. § 3663(c), and depriving the district court of authority to impose restitution. The parties are familiar with the facts, so we will discuss only those facts relevant to our resolution of the issues.

Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

I.

A. <u>Presentation of Allegedly Perjured Testimony</u>

We review a district court's denial of a motion for a new trial based on prosecutorial misconduct for abuse of discretion. <u>See</u> <u>United States v. Gabaldon</u>, 91 F.3d 91, 93 (10th Cir. 1996). Claims alleging the prosecution's knowing use of perjured testimony also fall under an abuse of discretion standard of review. <u>See</u> <u>United States v. Wolny</u>, 133 F.3d 758, 762 (10th Cir. 1998).

Bloomgren claims April Pellman, a witness for the prosecution, perjured herself during the following exchange between her and Bloomgren's counsel on re-cross examination:

Q:    Did you have any–have any drug problems in 1996 with the law?
A:    No, sir.
Q:    You weren't arrested in '95 or '96?
A:    No, sir.
Q:    For nothing?
A:    For nothing.

(ROA Vol. 6 at 29.)

In 1996, Pellman, under the name April Daley,[1] was prosecuted under a Wyoming statute for possession of marijuana. The government prosecutor in the instant case, Michael Blonigen, prosecuted Pellman, under the name of April Daley, for this incident in 1996. Bloomgren claims Pellman's answer that she did not have any drug problems with the law in 1996 is false. He argues that because Blonigen prosecuted Pellman in 1996, he knew her answer on the stand was false, yet failed to correct it.

The prosecution's knowing use of perjured testimony violates a defendant's Due Process rights. See Wolny, 133 F.3d at 762. To obtain a new trial, a defendant must show: "(1) that the testimony was false, (2) that it was material, and (3) that it was knowingly and intentionally used by the government to obtain

---

[1] Neither party has provided an explanation of why or how the witness's name changed.

a conviction." Id. (considering a motion for mistrial). We need not consider the first two requirements because we conclude Bloomgren has not demonstrated that the Government knew Pellman's testimony was false.[2]

Bloomgren generally claims that Blonigen's statements to the court regarding the defense's post-trial motion demonstrate Blonigen's knowledge that Pellman had been convicted in 1996. Upon review of the record, we fail to see how Blonigen's comments establish his knowledge that Pellman perjured herself on the stand. Blonigen stated that he did "not recall" the case, but that he had reviewed her file.[3] (ROA Vol. 13 at 33.) The 1996 incident was an unremarkable misdemeanor case that happened several years prior to the instant case. Further, April Pellman was charged under a different name, April Daley. Blongien told the court "I did not recall [April Pellman] by that name, [April Daley], until [defense counsel] filed this motion, in fact, I didn't recall the case until [defense counsel] went back and reviewed it all." (Id. at 35.) Bloomgren offers no

---

[2] We need not decide whether Pellman's testimony was in fact false. She pled guilty to the offense and entered into a treatment program. Under the Wyoming statute, a judgment is not entered, and upon successful completion of probation, a dismissal occurs. She was asked a rather vague question, and there is no indication that her involvement with the law, which did not amount to a conviction, constituted "problems" with the law in her mind. There is also no indication in the record that Pellman was arrested.

[3] The entirety of Blonigen's testimony on this issue suggests that he reviewed Pellman's file upon Bloomgren filing his motion for a new trial, as opposed to reviewing the file prior to trial.

- 4 -

evidentiary support for his allegation that Blonigen knew at trial that Pellman's testimony was false. Given this lack of evidence, the trial court did not abuse its discretion in refusing to grant Bloomgren's motion for a new trial based on the Government's alleged use of perjured testimony.

B. Failure to collect and preserve evidence

This court reviews a district court's conclusion that the government did not destroy potentially exculpatory evidence for clear error. See United States v. Bohl, 25 F.3d 904, 909 (10th Cir. 1994). The nondisclosure of evidence is divided into two distinct universes: Brady v. Maryland, 373 U.S. 83 (1963) and its progeny govern exculpatory material that is still in the government's possession, and California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988), govern exculpatory evidence no longer in the government's possession. See United States v. Gomez, 191 F.3d 1214, 1218 (10th Cir. 1999). This case concerns evidence in the latter category.

1. Trombetta

Bloomgren claims that the police failed to collect and preserve exculpatory evidence during its search of the Ranch, such as clothing, documents, and personal effects belonging to others, which would demonstrate that others stayed

at the Ranch. He also claims that fingerprints were possibly damaged or destroyed when a rifle was allegedly mishandled, and that those prints could have demonstrated that others had access to the rifle.

For police destruction of evidence to rise to the level of affecting a defendant's Due Process rights under California v. Trombetta, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489. Bloomgren has not demonstrated that the evidence had apparent exculpatory value. Further, the fact that comparable evidence was presented at trial demonstrates that Bloomgren had other reasonable means of obtaining the evidence.

Taking the fingerprint evidence first, Appellant offers mere speculation about what fingerprint testing would have shown. There was no reason for the police to believe that this fingerprint evidence would "play a significant role in [Bloomgren's] defense." Trombetta, 467 U.S. at 488. Bloomgren never requested fingerprint testing of the rifle. At trial, he admitted that he knew of the rifle (ROA Vol. 5 at 60), and his son's testimony placed the rifle in his hands. (ROA Vol. 10 at 85.)

Comparable evidence was presented at trial to show that others had access to the Ranch. The housekeeper testified that small children and individuals with clothing sizes different than that of Bloomgren lived in the house. Photographs of the bathroom where the drugs, firearms, and safe containing Bloomgren's personal documents were located, showed both men's and women's toiletries. These photos were admitted into evidence. A police officer testified at trial that he found both men's and women's clothing in the house. The police did not destroy these items; they simply did not seize them. The presentation of this evidence means that the failure to collect simply was not prejudicial.

Because Bloomgren has not demonstrated that the evidence in question had apparent exculpatory value, and even if he had, because comparable evidence was presented at trial, he has not established a violation of Trombetta.

2. Youngblood

When the evidence in question is only "potentially useful" to the defendant, as opposed to having exculpatory significance, the defendant must show that the police acted in bad faith when destroying the evidence in order to sustain a due process challenge. Youngblood, 488 U.S. at 58. Even assuming that the clothes and fingerprints were "potentially useful," which we doubt, Bloomgren has not demonstrated that the police acted in bad faith.

In Bohl, this court identified five factors it found useful in determining whether the government acted in bad faith: (1) the government had been explicitly placed on notice that defendants believed the evidence to be exculpatory; (2) defendant's assertion that the evidence was potentially exculpatory was supported with objective evidence and was not "merely conclusory;" (3) the government still had the evidence within its control when it received notice from the defendants about the evidence's exculpatory value; (4) the evidence disposed of was central to the government's case; and (5) the government offered no innocent explanation for its failure to preserve the evidence. 25 F.3d at 911-12. In this case, Bloomgren has not established any of these factors to support his argument that the police acted in bad faith.

We find no clear error in the district court's denial of Bloomgren's motion for a new trial on the basis of destruction of evidence. Accordingly, we affirm that decision.

C. Apprendi

Bloomgren was convicted of conspiracy to distribute and possess with intent to distribute quantities of methamphetamine totaling 2130.52 grams in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A) and § 846 (Count 1) and possession with intent to deliver methamphetamine in violation of §§ 841 (a)(1)

and (b)(1)(B) (Count 2).[4]   Prior to trial, the Government filed an information pursuant to 21 U.S.C. § 851, seeking an enhanced penalty based on Bloomgren's prior felony drug conviction.  The trial court did not instruct the jury that they had to find specific quantities of methamphetamine for Counts 1 and 2.

Bloomgren claims that his 360 month sentences for Counts 1 and 2 run afoul of Apprendi, 530 U.S. 466, because the issue of drug quantity was never submitted to the jury.  Because he did not raise the issue below, we review for plain error.  United States v. Keeling, 235 F.3d 533, 538 (10th Cir. 2000), cert. denied, 533 U.S. 940 (2001).

In this case, we find no Apprendi error because Bloomgren's 360 month sentences fall within the statutory maximum.  See United States v. Wilson, 244 F.3d 1208, 1215 (10th Cir. 2001) ("If drug quantity did not cause [defendant's] sentence to exceed the statutory maximum, Apprendi does not require that the jury make findings on quantity."), cert. denied, 533 U.S. 962 (2001).  If a specific quantity of drugs is not found, the statute provides a maximum sentence of twenty years.  21 U.S.C. § 841 (b)(1)(C).  Here, however, the § 851 enhancement[5] increased the maximum penalty under § 841(b)(1)(C) to thirty years, which is the sentence that Bloomgren received.  Therefore, Apprendi does not apply here

---

[4] The indictment for Count 2 did not allege a quantity of methamphetamine.

[5] The Government's information seeking an enhanced penalty satisfies the requirement that the offense be properly charged.

because it is a highly specialized challenge that only pertains to sentences that exceed the statutory maximum.[6]

D. Sentencing Guidelines

Lastly, Bloomgren argues that the Sentencing Commission has not promulgated adequate guidelines for community restitution, and that therefore, the trial court had no authority to order restitution. The interpretation of a statute is a question of law that we review de novo. United States v. Acosta-Olivas, 71 F.3d 375, 377 (10th Cir. 1995).

When there is no identifiable victim, 18 U.S.C. § 3663(c) authorizes community restitution. That section directs the United States Sentencing Commission ("USSC") to "promulgate guidelines to assist courts in determining the amount of restitution" that is appropriate. 18 U.S.C. § 3663 (c)(7)(A). In

---

[6] We acknowledge that some of our cases have explicitly gone through the plain error analysis of United States v. Olano, 507 U.S. 725, 732-36 (1993), in evaluating Apprendi challenges where the defendant's sentence did not exceed the statutory maximum, as opposed to stating that Apprendi does not apply unless the sentence received exceeds the statutory maximum. See, e.g., United States v. Heckard, 238 F.3d 1222, 1235 (10th Cir. 2001) (finding defendant's "substantial rights" were not affected where his sentence fell within the statutory maximum); United States v. Hishaw, 235 F.3d 565, 576 (10th Cir. 2000) (same), cert. denied, 533 U.S. 908 (2001). In any event, we have upheld defendants' sentences against Apprendi challenges, where, as here, they were within the statutory maximum, whether we have held that Apprendi was not applicable or that no "substantial rights" were affected under a plain error analysis.

response, the USSC crafted United States Sentencing Guideline § 5E1.1(d), which instructs courts to "tak[e] into consideration the amount of public harm caused by the offense and other relevant factors" when ordering community restitution, and cross-references a USSG section that contains a maximum limit for the fines. Given that Congress has given the USSC "substantial discretion" in enacting and formulating sentencing guidelines, Mistretta v. United States, 488 U.S. 361, 377 (1989), we are well-satisfied that there are adequate guidelines governing the imposition of community restitution.

II.

We AFFIRM the district court's opinion with respect to all issues raised.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

- 11 -