**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DEON ROLLEN, also known as
Deacon,

Defendant-Appellant.

No. 06-1017

(D. Colorado)

(D.C. No. 04-CR-514-EWN-1)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **BALDOCK**, and **HOLMES**, Circuit Judges.

## I.    INTRODUCTION

Defendant-Appellant Deon Rollen entered an oral guilty plea to nineteen

counts arising from a conspiracy to manufacture and distribute crack cocaine. At

sentencing, Rollen challenged the drug quantity calculation included in the

Presentence Investigation Report ("PSR") and used to calculate his base offense

level. The district court rejected Rollen's challenge and concluded Rollen was

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

responsible for "in excess of eleven kilograms of crack" during just a portion of the conspiracy period, a quantity significantly higher than the 1.5 kilograms necessary to place Rollen at a base offense level of thirty-eight.

On appeal, Rollen renews his objection to the district court's drug quantity calculation. He also argues his sentence is substantively unreasonable. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court determines the district court's drug quantity calculation was supported by a preponderance of the evidence. This court also concludes Rollen's sentence is substantively reasonable. Rollen's sentence is therefore **affirmed.**

## II.    BACKGROUND

Rollen, along with several other indicted individuals, was involved in a drug trafficking conspiracy in Colorado beginning in January 2003 and ending in December 2004. Rollen entered a guilty plea to one count of conspiracy to distribute and possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine or fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A); three counts of possession with intent to distribute a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); seven counts of distribution and intent to distribute five grams or more of cocaine base, in

violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii); and seven counts of using a communication facility to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b). Rollen also pleaded guilty under the criminal forfeiture statute applicable to drug crimes. *See* 21 U.S.C. § 853. Rollen admitted he purchased drugs, cooked powder cocaine into crack cocaine, sold drugs to other individuals, and knew that the others resold the drugs he provided. In exchange for Rollen's plea, the government agreed to recommend a 216-month prison sentence.

At Rollen's change of plea hearing, the government alleged that, based on its wiretap surveillance and other investigation, Rollen was "near the top" of a hierarchical conspiracy. The government stated its evidence would have shown that over a period of almost two years, Rollen purchased powder cocaine from several individuals, particularly co-defendant Richard Powell, went to the home of two co-defendants, Perry Syrie and Derrick Wiley, to cook the powder cocaine into crack cocaine, and distributed crack cocaine to Syrie and Wiley for redistribution to other sellers. The government stated the wiretap evidence collected in the fall of 2004 demonstrated Rollen visited Syrie's house two or three times per week and distributed two to three ounces of crack cocaine to Syrie and Wiley on each occasion. The government also indicated that early in the conspiracy period, during 2003, when Syrie and Wiley lived at a different residence, Rollen cooked between four-and-a-half and nine ounces of powder cocaine at their apartment two to three times per week. Syrie and Wiley would

then sell the crack cocaine on Colfax Avenue in Denver either to end-users or other redistributors. Rollen was usually paid little or nothing when he provided the crack to Syrie and Wiley but expected payment after the drugs had been resold.

In response to the government's evidence, Rollen asserted the government "had a lot of things right on the nose." He did, however, contend the government was mistaken in assuming that every wiretapped conversation between himself and Syrie and Wiley involved a discussion about repayment for crack cocaine, since he also sold marijuana. He also indicated that not every trip to the home of Syrie and Wiley involved cooking crack cocaine because problems with the cocaine powder sometimes prevented the manufacture of crack.

The PSR relied on the government's sentencing statement when assessing Rollen's offense conduct. Prepared after the conclusion of co-defendant Powell's trial at which Syrie and others involved in the conspiracy testified, the PSR indicated Syrie "reported and testified" he received a minimum of three to five ounces of crack cocaine from Rollen each week between August 2003 and November 2003. The PSR also stated that, between December 2003 and March 2004, Rollen supplied two to four ounces of crack cocaine per week to Syrie and Wiley and that several controlled buys of crack cocaine originating with Rollen were made in March, April, and August 2004. Additionally, according to the PSR, from April 2004 to December 2004, Syrie purchased two to four ounces of

crack cocaine from Rollen[1]; another co-defendant, Akinlabi Coleman, testified he purchased four ounces of crack cocaine three times per week from Rollen between July 2004 and November 2004; Wiley was supplied with one or two ounces of crack cocaine by Rollen during this same period in 2004. Based on this information, the PSR concluded ten kilograms or more of cocaine base were involved in Rollen's offenses and, therefore, Rollen's base offense level was calculated as thirty-eight. The PSR recommended a three-point departure for acceptance of responsibility, resulting in a total offense level of thirty-five. Combined with his criminal history of Category IV, Rollen's sentencing range under the advisory Sentencing Guidelines was 235 to 293 months' imprisonment. The probation officer recommended the court impose a 250-month concurrent prison term, as well as a sixty-month term of supervised release.

Rollen objected to the drug quantity calculation contained in the PSR. Although he did not take issue with any of the very specific statements in the PSR, he asserted his conduct involved less than five kilograms of powder cocaine and, as a result, pursuant to U.S.S.G. § 2D1.1, his base offense level should have been thirty.

---

[1]It is unclear from the PSR whether Syrie purchased two to four ounces of crack each time Rollen visited his home during this period or whether he purchased two to four ounces of crack total. Given the government's statements at the change of plea hearing, the district court construed the amounts Syrie purchased from Rollen to be per-visit amounts. Rollen does not contest this assumption.

At the sentencing hearing, the court rejected Rollen's challenge. It stated that, at the change of plea hearing, Rollen had not objected to the government's contention that he met with Syrie and other individuals two to three times per week in the fall of 2004 and cooked two to three ounces of crack cocaine on each occasion. Accordingly, the court stated,

> Taking the most conservative figures in this limited time range, this would be at least 1 kilogram of cocaine during this period alone.
>
> The Government also represented that during 2003, the quantities cooked on each occasion were higher, 4.5 ounces on each occasion.[2] Given the number of weeks in the year and the frequency of the defendant's visits to Mr. Syrie, the Court concludes that in excess of 11 kilograms of crack was involved in 2003.

Notwithstanding its eleven-kilogram estimate, however, the district court observed that "1.5 kilos of crack cocaine suffices to place the defendant at Base Offense Level 38. Therefore . . . there can be no question that the defendant has under oath admitted conduct placing him well within this level."

Rollen himself then addressed the court. He admitted he did not know how much crack cocaine he sold, but urged the court that, despite the government's

_____

[2]At the change of plea hearing, the government represented the 4.5 to 9 ounce figure as "powder cocaine." In the court's recitation of the government's evidence, however, the court seems to treat the 4.5 ounce quantity as crack cocaine. Because Rollen did not object to or even take note of this discrepancy either in the court below or on appeal, this court assumes the government simply misspoke at the change of plea hearing and that it intended to say Rollen cooked and distributed 4.5 to 9 ounces of crack cocaine two to three times per week in 2003.

characterization, he was not a "major kingpin." In particular, he stated he did not cook crack cocaine or give drugs to Syrie, a friend of twenty years, every time he went to Syrie's house. The court responded it had heard testimony from Syrie at trial on the matter and reiterated it found Rollen responsible for at least eleven kilograms of cocaine base. The court ultimately sentenced Rollen to a within-Guidelines sentence of 264 months' imprisonment. As part of its consideration of the factors set out at 18 U.S.C. § 3553(a), the court commented that Rollen was a "central figure" in the case and not particularly remorseful for his conduct. The court also ordered Rollen to serve a five-year term of supervised release upon completion of his prison term and required him to pay a special assessment of $1800.

## III.   DISCUSSION

### A. Drug Quantity Used for Sentencing Purposes

On appeal, Rollen contests the district court's drug quantity calculation. He first argues he should only have been held responsible for the 169 grams of crack cocaine included in the indictment, rather than the eleven-kilogram quantity for which the district court determined him responsible. Rollen next contends the court erred by failing to rule on the disputed portions of the PSR affecting his sentence, as required by Federal Rule of Criminal Procedure 32(i)(3)(B). Furthermore, Rollen asserts there was insufficient independent corroborating

evidence to support the government's estimate of the drug amounts attributable to him because co-defendant Syrie's testimony was inherently unreliable and informant Lora Wilson's out-of-court statements did not mention drug quantities. Finally, Rollen challenges the method by which the district court arrived at its eleven-kilogram calculation, arguing the court improperly extrapolated from his drug activity during a four-month period in 2004 to arrive at a total drug quantity attributable to him during the entire course of the conspiracy.

At sentencing, the government bore the burden of proving by a preponderance of the evidence the quantity of drugs attributable to Rollen for sentencing purposes. *United States v. Ryan*, 236 F.3d 1268, 1273 (10th Cir. 2001). "When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate . . . so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005) (quotations omitted). In a drug conspiracy case, the defendant is accountable for all quantities with which he was directly involved and all quantities which would have been reasonably foreseeable within the scope of the jointly undertaken criminal enterprise. *United States v. Lauder*, 409 F.3d 1254, 1267 (10th Cir. 2005) (citing U.S.S.G. §1B1.3 cmt. n.2).

This court reviews the district court's drug quantity calculation for clear error. *Ryan*, 236 F.3d at 1273. Reversal is appropriate only if the record lacks

factual support or "we are left with a definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). When the district court relies upon witness testimony in making its drug quantity calculation, this court defers to the district court's determinations of witness credibility. *United States v. Browning*, 61 F.3d 752, 754 (10th Cir. 1995).

The district court's drug quantity determination in this case was not clearly erroneous. Nothing precluded the government from presenting evidence of drug quantities in excess of those included in the indictment for sentencing purposes and nothing prevented the court from finding Rollen responsible for quantities in excess of the indicted amounts because the district court's sentence did not exceed the statutory maximum sentence of life imprisonment for which Rollen was eligible. *See United States v. Wilson*, 244 F.3d 1208, 1216 (10th Cir. 2001); *see also* 21 U.S.C. § 841(b)(1)(A)(iii) (prescribing statutory maximum of life imprisonment).

Moreover, the court satisfactorily responded to Rollen's objections at sentencing by explaining the basis for its calculation. *United States v. Williams*, 374 F.3d 941, 947 n.9 (10th Cir. 2004). Because 1.5 kilograms of crack cocaine is all that is required to arrive at a base offense level of thirty-eight, *see* U.S.S.G. § 2D1.1(c)(1), in order to affirm the district court's calculation of Rollen's advisory Guidelines sentencing range, this court must merely be satisfied the record supports a finding that 1.5 kilograms is attributable to Rollen. *See United*

*States v. Humphrey*, 208 F.3d 1190, 1209–10 (10th Cir. 2000) (holding harmless any error in district court's drug quantity determination where undisputed quantity of drugs was enough to place defendant at the base offense level calculated by the district court).  The trial court admittedly did not calculate the precise drug quantity attributable to Rollen, stating that "in excess of eleven kilograms of crack was involved in 2003" and that Rollen was responsible for "at least one kilogram of cocaine" during the 2004 wiretap period.  The record, however, indicates there was more than enough evidence from which the court could have concluded Rollen was responsible for at least 1.5 kilograms of crack cocaine over the entire January 2003 to December 2004 period of the conspiracy.[3]

Furthermore, the evidence the court relied upon in calculating the drug quantity attributable to Rollen bore sufficient indicia of reliability.  The

_____

[3]Although it is unclear from the record how the district court arrived at its calculation, a rough estimate based on the government's allegations and the court's statements indicate Rollen was probably responsible for far more than the eleven kilograms of crack cocaine found by the district court.

The government's evidence was that, from September 2004 to December 16, 2004, the period when Rollen's phone was wiretapped, Rollen cooked crack cocaine at the residence of Syrie and Wiley two to three times per week and distributed two to three ounces of crack cocaine to Syrie on each visit during this time period.  Assuming, conservatively, Rollen distributed two ounces of crack cocaine twice per week for fourteen weeks, he would have distributed a total of fifty-six ounces, or just over 1.5 kilograms of crack cocaine.  Additionally, at Rollen's change of plea hearing, the government indicated that during 2003, Rollen cooked 4.5 to 9 ounces two to three times per week.  Assuming again, conservatively, that Rollen cooked only 4.5 ounces two times per week each week, he would have been responsible for 468 ounces, or 13.3 kilograms, of crack cocaine in 2003.

government provided specific information about the quantity of cocaine Rollen cooked on each visit to the residence of Syrie and Wiley during at least two distinct time periods and about the quantities Rollen provided to other individuals over the course of the conspiracy. The government based its assertions on an informant's statements regarding Rollen's activities, Syrie's statements prior to co-defendant Powell's trial, and the trial testimony of Syrie and other co-conspirators. The court had the opportunity to assess the credibility and reliability of that testimony throughout Powell's trial. Rollen's mere suggestion that Syrie's testimony is inherently unreliable because of Syrie's self-interested motive for testifying is not enough to override the general rule regarding the district court's role in evaluating witness credibility.[4] *See Browning*, 61 F.3d at 754.

Finally, the district court did not improperly extrapolate the amount of crack cocaine for which Rollen was responsible. The court was entitled to estimate drug quantity in any reliable manner it chose, including computing

---

[4]Rollen takes issue with the PSR's statement as to what Syrie "reported and testified to" and asserts Syrie did not testify at Powell's trial to all the information attributed to him in the PSR. Rollen, however, did not include Syrie's trial testimony in the record on appeal. This court is thus unable to review for itself whether Syrie's testimony did or did not contain the statements attributed to him in the PSR. In any event, a sentencing court is permitted to rely on out-of-court statements so long as those statements bear indicia of reliability. As a consequence, the district court was well within its discretion to consider Syrie's unsworn statements to law enforcement as well as Syrie's trial testimony when sentencing Rollen. *See United States v. Shewmaker*, 936 F.2d 1124, 1129 (10th Cir. 1991).

quantity based on the frequency and amount of drug manufacturing and distribution over a given period of time. *See United States v. Powell*, 982 F.2d 1422, 1435 (10th Cir. 1992) (quotation omitted). Based on this court's review of the record, the district court appropriately and conservatively based its drug quantity calculation on the government's lowest estimates of both the frequency of Rollen's visits to Syrie and Wiley and the quantity of crack cocaine cooked on each visit during each of two distinct time periods. There was no error in this approach.

**B. Substantive Reasonableness of Rollen's Sentence**

Having determined Rollen's base offense level was properly calculated, this court applies a presumption of reasonableness to Rollen's sentence.[5] *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006); *see also Rita v. United States*, 127 S. Ct. 2456, 2463 (2007) (approving appellate court application of presumption of reasonableness to properly calculated within-Guidelines sentences). A defendant can rebut a presumptively reasonable sentence only by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a). *Kristl*, 437 F.3d at 1054.

---

[5]On appeal, Rollen resurrects a challenge to the number of criminal history points used to calculate his criminal history category. Rollen explicitly abandoned this objection to the PSR before the district court and has, therefore, waived this argument on appeal. Rollen does not otherwise challenge the procedures the district court used to arrive at a sentence.

Rollen's sole substantive challenge to the reasonableness of his 264-month sentence focuses on the disparity under the advisory Guidelines between crack cocaine and powder cocaine offenses. There is certainly no obligation on the part of a district court to take into account this Guidelines' disparity as part of its § 3553(a) analysis. As a result, the nature of Rollen's offenses as crack cocaine offenses cannot make his sentence substantively unreasonable.[6] *See United States v. McCullough*, 457 F.3d 1150, 1171–72 (10th Cir. 2006).

---

[6]Although neither have any bearing on this court's disposition of Rollen's case, Rollen correctly notes the Guidelines' disparity has been called into question. The Sentencing Commission has recently proposed an amendment to the Sentencing Guidelines which would modify the Guidelines' current 100-to-1 crack-to-powder ratio in sentencing. *See* Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28,558, 28,571–73 (May 21, 2007) (notice of submission to Congress of amendment). The Guidelines themselves will not be modified however, absent congressional action to stop the modification, until November 1, 2007. *See id.* at 28,558. Even if the amendment does take effect, there is no guarantee it will apply retroactively to previously sentenced defendants. *See* Sentencing Guidelines for United States Courts, 72 Fed. Reg. 41,794, 41,794 (July 31, 2007) (notice seeking public comment on retroactivity of Guidelines amendment).

Additionally, the Supreme Court is scheduled to hear oral argument in October 2007 on a related, but different, question. In *United States v. Kimbrough,* the district court imposed a below-Guidelines sentence on a defendant convicted of crack cocaine offenses based on the court's policy disagreement with the Guidelines' disparity in sentencing ranges between crack and powder cocaine offenses. 174 F. App'x 798, 799 (4th Cir. 2006), *cert. granted*, 127 S. Ct. 2933 (June 11, 2007) (No. 06-6330). The Fourth Circuit held such a below-Guidelines sentence per se unreasonable. *Id.*

## IV.   CONCLUSION

Because the district court did not err when calculating the drug quantity attributable to Rollen or when imposing Rollen's sentence, the sentence imposed by the district court is **AFFIRMED.**

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge