**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 5, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JACKIE LEE CHAMBERS,

Defendant-Appellant.

No. 07-6087

Western District of Oklahoma

(D.C. No. 5:06-CR-00151-C)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, **EBEL**, and **McCONNELL**, Circuit Judges.

On June 21, 2006, Jackie Lee Chambers was charged in a five-count

indictment in the Western District of Oklahoma for (1) possession of a firearm

after previously being convicted of a crime punishable by a term of imprisonment

exceeding one year, in violation of 18 U.S.C. § 922(g)(1); (2) knowingly and

intentionally possessing with intent to distribute five grams or more of a mixture

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1); (3) knowingly carrying firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); (4) knowingly and intentionally possessing a mixture or substance containing a detectable amount of cocaine powder, in violation of 21 U.S.C. § 844(a); and (5) knowingly and willfully making materially false, fictitious, and fraudulent statements in a matter within the jurisdiction of the Federal Bureau of Investigation, in violation of 18 U.S.C. § 1001(a)(2).

The jury convicted Mr. Chambers on counts one, two, four, and five, and acquitted him of count three. At sentencing the district court calculated Mr. Chambers' total offense level as thirty-eight, and his criminal history category as IV. After considering applicable enhancements, the court determined a Guidelines range of 324 to 405 months and sentenced Mr. Chambers to 324 months' custody and eight years' supervised release. Mr. Chambers timely appealed his conviction and sentence, as well as the earlier denial of his motion to suppress statements made to an FBI agent while he was in custody. We reject Mr. Chambers' objections and affirm the district court.

## I. Background

On May 17, 2006, sixteen-year-old Savannah Heath called 911 to report that Mr. Chambers was at her house threatening her with a gun. When a sheriff's deputy arrived, Ms. Heath told the deputy that Mr. Chambers had left but was

carrying two guns and seventeen grams of cocaine. While the deputy was interviewing Ms. Heath, Mr. Chambers drove in front of Ms. Heath's home. The interviewing deputy and a back-up deputy stopped Mr. Chambers in his vehicle. When the deputies frisked him, they found that he was wearing body armor and had a revolver in his back pocket. In his car, the deputies found a small baggie of cocaine, a loaded handgun, a box of 9mm bullets, a briefcase containing several baggies of crack cocaine, dozens of empty plastic baggies, a set of digital scales, and over $700 in cash.

Mr. Chambers was arrested and on May 19, 2006, he was arraigned on state charges and interviewed by the FBI. During the interview, Mr. Chambers admitted that the gun, drugs, and other items found in the car were his. However, Mr. Chambers told the FBI agent that his name was Kenneth Michael Richard Chambers and that he had been mistakenly identified as Jackie Lee Chambers. Later investigation revealed that Kenneth Chambers was the name of Jackie Lee Chamber's long-deceased brother.

At Mr. Chambers' trial, several teenagers testified that he supplied them with crack cocaine. Exhibits at the trial included a photograph of Mr. Chambers at Ms. Heath's sixteenth birthday party carrying a large baggie of crack, and a text message from one of the teenagers asking Mr. Chambers to bring her "a lot" of crack. Doc. No. 118 at Exhibit 15, 18. Because he had a prior felony conviction for possession of a controlled dangerous substance, the jury convicted

Mr. Chambers of being a felon in possession of two firearms, of possessing the small baggie of powder cocaine found in his car, of possessing at least five grams of crack cocaine with intent to distribute, and of lying to the FBI about his true identity.

Mr. Chambers was sentenced on April 4, 2007. At his hearing, he raised several objections to the Guidelines calculations made in the Presentence Investigation Report ("PSR"). First, he objected to the amount of drugs for which he could be held accountable as "relevant conduct" for purposes of sentencing. The PSR recommended that the court hold Mr. Chambers accountable for 71.89 grams of crack cocaine and 35.41 grams of powder cocaine. After holding a full hearing on the issue, the court held Mr. Chambers accountable for 51.89 grams of crack cocaine and the full amount of powder cocaine.

Second, Mr. Chambers objected to the base offense level increase pursuant to U.S.S.G. § 3B1.5(2)(B) for wearing body armor while in possession of drugs with intent to distribute. The district court overruled the objection, finding that the body armor was used by Mr. Chambers during the commission of the offense charged in the indictment and for which he had been found guilty by the jury, and therefore that the enhancement was applicable.

Lastly, Mr. Chambers objected to the criminal history enhancement pursuant to § 4A1.2(m) based on an outstanding warrant for his violation of the terms of a prior suspended sentence. The state withdrew that warrant two and a

half months after Mr. Chambers was arrested in this case because Mr. Chambers was being prosecuted federally. The district court ruled at sentencing that so long as the warrant was outstanding at the time Mr. Chambers committed the offense, he qualified for the § 4A1.2(m) criminal history enhancement.

Mr. Chambers appeals these sentencing decisions by the district court, and additionally argues that: (1) the district court erred by enhancing his sentence based on prior convictions not found by a jury beyond a reasonable doubt; (2) there was insufficient evidence to allow a reasonable jury to convict him of possessing at least five grams of crack cocaine with intent to distribute; and (3) the district court erred by not suppressing statements he made to an FBI agent after he was arraigned on state charges related to his arrest in this case.

## II. Analysis

## A. Drug Quantities

Drug quantity findings for Guidelines calculations are factual findings reviewed for clear error. *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005). When the amount of drugs seized does not reflect the full scale of the defendant's drug activities, the Guidelines instruct district courts to "approximate" the drug quantity for which the defendant is responsible. U.S.S.G. § 2D1.1 cmt. 12. The district court may estimate the drug quantity in any reliable manner, as long as the evidence on which it relies bears "minimum indicia of reliability." *United States v. Browning*, 61 F.3d 752, 754 (10th Cir. 1995).

Mr. Chambers makes several specific objections to the district court's drug quantity estimations. The court estimated that Mr. Chambers distributed at least 3.5 grams of crack cocaine at Ms. Heath's sixteenth birthday party based on the out-of-court statements of multiple witnesses and the photograph of Mr. Chambers holding a large baggie of crack cocaine at the party. Mr. Chambers objects that there was no evidence that the entire amount of crack cocaine shown in the photograph was actually consumed at the party. However, in addition to the photograph, there were statements by multiple witnesses as to the amount consumed. Mr. Chambers admits that "testimony showed that at most ten individuals each had at least one hit of the pipe," Aplt's Br. 16, and one witness testified at trial that the crack pipe was passed around "like, two, three times." Trial Tr., at 352. The drug investigator testified that, based on the evidence, up to ten people may have smoked crack at the party, the crack was passed around multiple times, and a single dosage unit is generally between 0.20 and 0.25 grams. Based on this information, 3.5 grams was a relatively conservative estimate and was not clearly erroneous.

Second, Mr. Chambers objects to the district court's estimate that Mr. Chambers distributed at least 20 grams of crack cocaine to Aaron Paddyaker. Mr. Paddyaker testified that he worked on a construction site for Mr. Chambers five days a week for two or two and a half months and that during most of that time, Mr. Chambers paid him with a pinkie-sized rock of crack once or twice a day.

The PSR estimated that Mr. Chambers gave Mr. Paddyaker, in total, 40 grams of crack (0.5 grams twice per day for 40 days). Given that Mr. Paddyaker testified that he received crack *once or twice* per day, the district court set the drug amount at 20 grams, half that recommended by the PSR.

Mr. Chambers objects that Mr. Paddyaker worked less than 40 days. Mr. Reed, the owner of the house that Mr. Chambers was remodeling, testified that a check dated April 6, 2006, was "a copy of a check that I gave to [Mr. Chambers] to start doing work on the house." Trial Tr. at 406. Mr. Chambers was arrested on May 17, 2006. Mr. Paddyaker testified that he started working for Mr. Chambers in March and "guesstimate[d]" that he quit working for Mr. Chambers in the latter part of April but was "not certain of the date." Sent. Tr. 28. Although Mr. Chambers is correct that this conflicting testimony could be construed differently, we do not review the district court's credibility determinations on appeal. *United States v. Rios*, 22 F.3d 1024, 1027 (10th Cir. 1994). The district court's reliance on Mr. Paddyaker's testimony as to the period of time he worked for Mr. Chambers was not clear error. Furthermore, the conservative estimate of 20 grams attributable to Mr. Chambers, given that Mr. Paddyaker was paid in crack once or twice per day, renders harmless some overestimate as to the number of days that Mr. Paddyaker worked for Mr. Chambers.

Finally, Mr. Chambers objects that drug amounts included in paragraphs fourteen, sixteen, and seventeen of the PSR were based on testimony from an unreliable witness. The witness testified that he had received crack from Mr. Chambers ten to fifteen times and on one occasion was provided a line of powder cocaine by Mr. Chambers. However, he could only specify the time and place that he received crack from Mr. Chambers on three of those occasions. We hold that the district did not commit clear error in considering the witness's testimony to be credible and finding that Mr. Chambers was responsible for providing ten 0.2-gram doses of crack cocaine to the witness, totaling 2 grams.

Mr. Chambers also objects that the drug amount to which paragraph nineteen of the PSR refers is impermissible because it is based on the statements of Bradley Scott Cordis made during an FBI interview while he was held in custody and facing criminal charges. However, we have held that "a sentencing court is permitted to rely on out-of-court statements so long as those statements bear indicia of reliability." *United States v. Rollen*, 239 F. App'x 451, 456 n.4 (10th Cir. Aug. 21, 2007). We agree with the district court that detailed evidence corroborated Mr. Cordis's testimony. For example, Mr. Cordis stated that he purchased drugs from Mr. Chambers at a home that was being remodeled near 122nd Street and I-35, in the Edmond, Oklahoma area, a location that other witnesses described as the site where they purchased drugs from Mr. Chambers or witnessed Mr. Chambers distributing drugs to others. Mr. Cordis also stated that

when he purchased the drugs, Mr. Chambers stored them in a pill bottle and was armed with a brown-handled .38 caliber revolver. When Mr. Chambers was arrested he was carrying two pill bottles containing drugs and a revolver fitting this description.

Furthermore, we find that if there was any error in the district court's findings, that error was harmless because the final estimates made by the court were conservative in light of other evidence that Mr. Chambers distributed more crack than was included in the PSR. The district court stated that it had "no question whatsoever that [Mr. Chambers] distributed the drugs that are mentioned in the presentence report and much, much more." Sent. Tr. at 88.

### B. Body Armor

Mr. Chambers claims that the district court erred in enhancing his base offense level pursuant to § 3B1.5(2)(B) for using body armor during the commission of the charged drug offense. Mr. Chambers admits to wearing body armor at the time he was arrested, but argues that the enhancement only applies if the body armor is worn in relation to or connection with the drug offense.

We agree with the district court's rejection of this interpretation of § 3B1.5(2)(B). Section 3B1.5(2)(B) instructs courts to enhance a defendant's offense level when the defendant was "convicted of a drug trafficking crime" and "used body armor during the commission of the offense." U.S.S.G. § 3B1.5(2)(B). The Guidelines commentary defines "use" as the "active

-9-

employment in a manner to protect the [defendant] from gunfire," *id.* at cmt. 1, which does not suggest an implicit limitation that the body armor must be used in connection with the drug trafficking offense. Where the Guidelines intend such a requirement for application of an enhancement, they state so explicitly. *See e.g.*, § 2K2.1(b)(6) (applying enhancement if defendant "used or possessed any firearm or ammunition *in connection with* another felony offense") (emphasis added). Because the court found that "the body armor or bullet-proof vest was functional, it was being used in the manner for which it had been intended . . . at the time [Mr. Chambers] possessed drugs . . . with the intent to distribute them," Sent'g Tr. 86, application of the enhancement was appropriate.

### C. Criminal History

The district court increased Mr. Chambers's criminal history score by two points pursuant to § 4A1.2(m) because, at the time he was arrested in this case, he had an outstanding arrest warrant for violating the terms of his suspended sentence in a prior case. He argues that the court erred in increasing his criminal history score because the arrest warrant was dropped once the state learned that Mr. Chambers was being prosecuted federally in this case, and because the warrant was "stale" at the time that Mr. Chambers committed the instant offense.

Section 4A1.1(d) states that the district court shall increase a defendant's criminal history score by two points "if the defendant committed the instant offense while under any criminal justice sentence." Section 4A1.2(m) states that

a defendant "shall be deemed to be under a criminal justice sentence" if he "commits the instant offense while a violation warrant from a prior sentence is outstanding." That the warrant was later withdrawn is irrelevant to the application of the enhancement because the Guideline explicitly states that the enhancement shall apply if the defendant was under any criminal justice sentence *at the time* he committed the instant offense.

Mr. Chambers also argues that the warrant was stale, and therefore, that he was no longer under a criminal justice sentence at the time he committed the instant offense because his probation period would have expired on March 3, 2003. However, Mr. Chambers may not present this staleness argument on appeal because he failed to raise it before the district court. *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993).

## D. Sixth Amendment

Mr. Chambers argues that the district court violated his Sixth Amendment right to a jury trial by using judge-found facts to enhance his sentence under the Guidelines. This argument is precluded by Supreme Court precedent. *Almendarez-Torres v. United States* held that prior felony convictions are sentence enhancements, not elements of an offense, and therefore need not be proved to a jury beyond a reasonable doubt. 523 U.S. 224 (1998). This holding has not been overruled; *Apprendi v. New Jersey* specifically carved out an exception for previous convictions from its holding that "any fact that increases

-11-

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Furthermore, the Sixth Amendment right to a jury trial is not implicated by judicial factfinding under a discretionary sentencing regime such as the Sentencing Guidelines. *See Rita v. United* States, 127 S. Ct. 2456, 2468–69 (2007); *United States v. Ramirez*, 479 F.3d 1229, 1255–56 (10th Cir. 2007). Therefore we reject Mr. Chamber's Sixth Amendment claim.

### E. Sufficiency of the Evidence

"Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. LaVallee*, 439 F.3d 670, 697 (10th Cir. 2006). To convict a defendant of possessing at least five grams of crack with intent to distribute, a jury must find beyond a reasonable doubt that: (1) the defendant possessed at least five grams of crack cocaine; (2) he did so knowingly; and (3) he did so with the intent to distribute it. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Mr. Chambers disputes that, although at least five grams of crack were found in his car, there was insufficient evidence that he intended to distribute it.

When Mr. Chambers was stopped he was carrying nearly twenty grams of crack held in several baggies, a set of digital scales, over $700 in cash, and a supply of empty plastic baggies. Mr. Chambers was also wearing body armor,

-12-

carrying a revolver in his back pocket, and had another loaded handgun in his car. At trial, the government provided expert testimony that these items are indicative of drug dealing. Furthermore, Agent Coyle testified that Mr. Chambers told him that he was carrying the drugs because of his "need for money" to pay his legal expenses. Trial Tr. 133. These facts are sufficient for a rational jury to conclude beyond a reasonable doubt that Mr. Chambers intended to distribute at least five grams of crack.

### F. Motion to Suppress

Mr. Chambers claims that the district court erred in refusing to suppress statements he made to an FBI agent after he was arraigned on state charges but before he requested an attorney. Mr. Chambers argues that his right to counsel attached at the time of his arraignment such that his waiver of his right to an attorney was invalid. When reviewing a district court's denial of a motion to suppress, we "accept [the district court's] factual findings unless clearly erroneous and view the evidence in the light most favorable to the government." *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999).

The district court correctly held that the right to counsel attaches, thereby invalidating any subsequent waiver, only if the defendant affirmatively asserts his right to counsel by requesting an attorney. *See Michigan v. Jackson*, 475 U.S. 625, 635–36 (1986); *United States v. Baez-Acuna*, 54 F.3d 634, 637 (10th Cir. 1995). Because Mr. Chambers offers no basis for us to find clearly erroneous, the

district court's determination that Mr. Chambers did not request an attorney either at his arraignment or interrogation, we affirm the district court's denial of Mr. Chambers' motion to suppress.

### III. Conclusion

Accordingly, we **AFFIRM** Mr. Chambers' conviction and sentence. We also **AFFIRM** the district court's denial of the motion to suppress Mr. Chambers' statement of May 19, 2006.

Entered for the Court

Michael W. McConnell
Circuit Judge